EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Migdalia Rivera Aponte<br><br>Demandante<br><br>vs.<br><br>Luis Antonio Morales Martínez<br><br>Demandado-Recurrido<br><br>Carlos E. Rivera Aponte,<br>Nydia Rivera Aponte<br><br>Interventores-Peticionarios | Certiorari<br><br>2006 TSPR 32<br><br>166 DPR ____ |

Número del Caso: CC-2004-1023

Fecha: 3 de marzo de 2006

Tribunal de Apelaciones:

      Región Judicial de Aibonito

Juez Ponente:

      Hon. German J. Brau Ramírez


Abogada de la Parte Interventora-Peticionaria:

      Lcda. Hilda Esther Colón Rivera

Abogada de la Parte Recurrida:

      Lcda. Nydia I. Espino Valcarcel



Materia: Divorcio


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Migdalia Rivera Aponte

    Demandante

       vs.

Luis Antonio Morales Martínez

    Demandado

                    CC-2004-1023    CERTIORARI

Carlos E. Rivera Aponte,
Nydia Rivera Aponte

    Interventores-peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 3 de marzo de 2006

El vínculo matrimonial que unía a Luis Morales Martínez y a María Rivera Aponte quedó roto y disuelto mediante sentencia de divorcio emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito, el 9 de febrero de 1998. En cuanto a los dos hijos menores de edad procreados durante el matrimonio, el mencionado foro concedió la custodia sobre el hijo menor al padre y la custodia de la hija menor, a la madre. La patria potestad sobre los dos menores fue concedida a ambas partes. En la referida sentencia, además, el foro primario estableció las relaciones paterno-filiales de cada parte con los menores que no estaban bajo su custodia.

Poco tiempo después, Rivera Aponte compareció al tribunal para solicitar se paralizaran las relaciones paterno filiales entre la hija menor y su padre; ello por razón de éste, alegadamente, haber cometido actos lascivos impúdicos contra su hija. El 19 de junio de 1998, el tribunal de instancia ordenó la paralización de las relaciones paterno filiales entre Morales Martínez y su hija menor hasta tanto culminara la investigación; además, refirió el asunto a la Oficina de Relaciones de Familia para que dicha oficina rindiera un informe.[1]

En su informe al tribunal, la trabajadora social que evaluó el caso expresó que, luego de analizadas las entrevistas realizadas a los padres de la menor, a su tía, a la principal del colegio, y el informe de la Dra. Aracelis Ortiz --quien evaluó a la menor-- recomendaba, entre otras medidas, que las relaciones paterno filiales continuaran suspendidas mientras se dilucidaban las alegaciones planteadas, considerando el estado emocional de la menor, para así protegerla de un daño emocional irreversible.[2]

---

[1] La menor, M.M.R. comenzó tratamiento médico el 29 de julio de 1998.

[2] En esencia, los informes de la Dra. Aracelis Ortiz, psicóloga que brindó servicios a la menor, expresan que ésta había relatado sobre la experiencia de abuso sexual; que presentaba sintomatología compatible con el trauma de abuso sexual; y que presentaba sentimientos de impotencia emocional y ansiedad ante la posibilidad de tener contacto con la figura paterna. Indicó que la menor había expresado no querer relacionarse con su padre. Por consiguiente,

Celebrada la vista, el tribunal ordenó a la Oficina de Relaciones de Familia coordinar un plan de relaciones paterno filiales supervisadas. Ante la tardanza de la trabajadora social en coordinar dichas relaciones, Morales Martínez presentó varias mociones ante el tribunal, solicitando se reestablecieran las relaciones paterno filiales o, en su defecto, que se coordinaran las visitas supervisadas ordenadas por el referido foro. Meses después, las relaciones paterno filiales supervisadas aun no habían sido coordinadas. Posteriormente, el tribunal indicó que había que esperar a que culminaran las evaluaciones para reestablecer las relaciones paterno filiales.

Para abril de 2002, aun no se habían coordinado las relaciones paterno filiales ya que la trabajadora social no lo había recomendado en espera de las recomendaciones de la psiquiatra que estaba ofreciendo tratamiento a la menor. Así las cosas, en marzo de 2004, la madre de la menor, María Rivera Aponte, falleció. La menor permaneció bajo la custodia de sus tíos, Carlos E. Rivera Aponte y Nydia Rivera Aponte, quienes días después del fallecimiento presentaron una solicitud de custodia. A su vez, solicitaron que se refiriera el asunto a la Oficina de Relaciones de Familia para investigación. En abril de ese año, el tribunal de instancia emitió resolución refiriendo el asunto a la referida Oficina.

---

recomendó que ésta no fuese expuesta al padre hasta tanto hubiera desarrollado mayor fuerza emocional.

Morales Martínez se opuso a la solicitud de custodia presentada por los hermanos de la fenecida y, a su vez, solicitó se le concediese la misma a él, por ser el padre con patria potestad sobre la menor. Posteriormente, Morales Martínez presentó una segunda moción solicitando la concesión de custodia y, en la misma, alegó que según el Artículo 107 del Código Civil, 31 L.P.R.A. sec. 383, el cónyuge que hubiese sido privado de la custodia tendría derecho a recobrarla si acreditaba al tribunal el fallecimiento de su ex cónyuge. Añadió, además, que los tíos de la menor impedían que él se relacionara con su hija.

Poco después, Morales Martínez presentó una moción oponiéndose a que el caso fuese referido a la Oficina de Relaciones de Familia. En la referida moción expresó que ya hacía varios años que ese foro había ordenado a los trabajadores sociales de dicha oficina a que coordinaran relaciones paterno filiales entre éste y su hija y que dichos funcionarios nunca lo hicieron. Además, reiteró su planteamiento en cuanto a que era el padre con patria potestad sobre su hija y que, ante la muerte de la madre, le correspondía a él, y no a ningún otro familiar, la custodia de ésta. El foro primario declaró no ha lugar la referida moción.

Inconforme con la anterior determinación, Morales Martínez acudió al Tribunal de Apelaciones vía recurso de *certiorari*. En su sentencia, el referido foro determinó, en

primer lugar, que según lo dispuesto en el Artículo 107 del Código Civil, ante, y habiendo fallecido Rivera Aponte, Morales Martínez tenía "<u>derecho</u>" a recuperar la custodia sobre su hija. En segundo lugar, el referido foro determinó que no estaba claro si los tíos de la menor tenían legitimación para solicitar que se privara a Morales Martínez de la custodia sobre su hija. Por consiguiente, el foro apelativo intermedio concluyó que dicha solicitud debía ser iniciada por el Departamento de la Familia, utilizando el procedimiento establecido por la Ley Núm. 177 del 1 de agosto de 2003, también conocida como Ley para el Bienestar y Protección Integral de la Niñez , 8 L.P.R.A. secs. 444 *et seq*.

En otras palabras, el tribunal apelativo intermedio concluyó que el caso no podía continuar su curso tal y como había sido iniciado <u>y debía transformarse en una solicitud de privación de custodia instada bajo la referida Ley</u>. En ausencia de este trámite, el foro apelativo entendió que no correspondería privar al Sr. Morales del derecho de custodia que le concedía su condición como padre con patria potestad sobre la niña.

Finalmente, el foro apelativo devolvió el caso al tribunal de instancia para que dicho foro subsanara los defectos procesales señalados y para que, dentro de un término no mayor de cinco (5) días, procediese al inicio de los procedimientos pertinentes bajo la Ley para el Bienestar y Protección Integral de la Niñez, ante. En el

caso que el foro primario incumpliera con dar inicio a estos procedimientos, el foro apelativo determinó que el Sr. Morales <u>tendría derecho a recuperar la custodia sobre la menor</u>.

Inconformes con la anterior determinación, Carlos E. Rivera Aponte y Nydia Rivera Aponte, acudieron vía recurso de *certiorari*, ante este Tribunal alegando que dicho foro incidió…

> al expresar que debía inexorablemente seguir los procedimientos conforme la Ley para el Bienestar y Protección Integral de la Niñez, ante la solicitud de custodia presentada por los aquí interventores-recurrentes, o que por el contrario debía entregarse la menor al recurrido conforme el Artículo 107 del Código Civil.

En el entretanto, y en cumplimiento con lo ordenado por el Tribunal de Apelaciones, el foro de instancia refirió el asunto al Departamento de la Familia para la investigación correspondiente y para que determinase si procedía iniciar un procedimiento bajo la Ley 177, ante. Posteriormente, el 5 de noviembre de 2004, <u>el tribunal expidió una orden de protección, en vista de que existían suficientes motivos para creer que la menor había sido víctima de maltrato, y en ésta ordenaba a Morales Martínez a abstenerse de acercarse a la menor</u>. Además, el tribunal de instancia concedió <u>custodia provisional</u> de la menor a Nydia Rivera Aponte. De los autos del presente caso no surge que el Departamento haya iniciado el referido procedimiento de privación de custodia.

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

El recurso radicado plantea, en esencia, dos controversias, a saber: ¿si procede en este caso, dados los hechos particulares del mismo, que se inicie un procedimiento de privación de custodia bajo la Ley para el Bienestar y Protección Integral de la Niñez, ante?; y, ante la muerte de uno de los padres, ¿si resulta obligatorio que un tribunal conceda la custodia de un menor al padre sobreviviente de acuerdo al Artículo 107 del Código Civil, ante, independientemente de las circunstancias particulares que puedan estar presentes en el caso?

II

El Artículo 3 de la Ley para el Bienestar y Protección Integral de la Niñez, ante, establece la política pública del Estado en ésta clase de situaciones. El mencionado Artículo dispone que el Estado, en ejercicio de su poder de *parens patriae*, tiene la obligación de velar por la seguridad, el mejor interés y bienestar de la infancia y la adolescencia. En atención a ello, la Ley confiere al Departamento de la Familia la responsabilidad de investigar y atender las situaciones de maltrato, maltrato institucional, negligencia y/o negligencia institucional.

Esta Ley confiere al Departamento de la Familia obligaciones, sustancialmente similares, a las que le confería también la derogada Ley Núm. 342 del 16 de diciembre de 1999, conocida como Ley para el Amparo a Menores. La Ley 342 también establecía la responsabilidad y la obligación del Departamento de la Familia de intervenir en casos de maltrato de menores y realizar los esfuerzos necesarios para fortalecer y mejorar la prevención, identificación, investigación y tratamiento de las situaciones de maltrato. De este modo, se facultó a dicho Departamento para iniciar ante los tribunales los procedimientos que fuesen necesarios para proteger el bienestar de los menores. Véase; Vargas Crespo v. Soler de la Rosa; res. el 30 de diciembre de 2003, 2003 T.S.P.R. 182.

Según el Artículo 31 de la Ley para el Bienestar y Protección Integral de la Niñez, 8 L.P.R.A. sec. 447, cuando de la investigación que el Departamento realice surja que existe una situación de maltrato o negligencia, la Secretaria o Secretario del mismo puede comparecer al Tribunal de Primera Instancia, quien tendrá jurisdicción para emitir órdenes de protección, otorgar custodia de emergencia, provisional o permanente, privar del ejercicio de la patria potestad al padre y/o madre del menor, según sea solicitado y cualquier otro remedio que garantice el mejor interés del menor.

La mencionada Ley provee, además, en circunstancias que ameriten una intervención rápida del Estado, un procedimiento de privación de custodia de emergencia. En estos casos el Tribunal tomará la determinación que considere más adecuada para el mejor interés del menor, incluyendo una orden para que inmediatamente se ponga al menor bajo la custodia del Departamento, que se efectúe el tratamiento médico del que se trate, o concediendo custodia de emergencia. Artículo 37, 8 L.P.R.A. sec. 447(f). Posterior a dicho procedimiento, los Artículos 39, 41, y 42 de la Ley, 8 L.P.R.A. secs. 447(h), 447(j) y 447(k), disponen un procedimiento de privación permanente de custodia y/o patria potestad, el cual garantiza el debido proceso de ley a las partes que podrían ser privadas permanentemente de la custodia y/o patria potestad que ostentan sobre los hijos menores de edad, removidos expeditamente de su custodia. Véase; Vargas Crespo v. Soler de la Rosa, ante.

En fin, la Ley para el Bienestar y Protección Integral de la Niñez, ante, reconoce la facultad del Estado de privarle, restringirle o suspenderle a los padres la patria potestad o custodia sobre sus hijos. Reconoce, específicamente, la facultad del Departamento de la Familia de iniciar ante los tribunales los anteriores procedimientos. Ahora bien, ciertamente, esta facultad debe ejercerse de forma prudente y cuidadosa. Ello, porque los menores de edad no son meras criaturas del Estado y debido

a que la relación entre padres e hijos está protegida constitucionalmente y los padres, de ordinario, tienen derecho a decidir sobre el cuido, la custodia y el control de sus hijos. Rexach v. Ramírez Vélez res. el 15 de junio de 2004, 2004 T.S.P.R. 97; citando a Pierce v. Society of Sisters, 268 U.S. 510, 535 (1925); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972); Stanley v. Illinois, 405 U.S. 645, 651 (1972); Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Washington v. Glucksberg, 521 U.S. 702, 720 (1997).

Ello no obstante, los derechos de los padres pueden ser limitados en aras de proteger el interés apremiante del Estado, consistente el mismo en el bienestar de los menores. Véase: Rexach v. Ramírez Vélez, ante. En ese sentido, hemos expresado que aun cuando el derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía, el mismo tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor. Véase: Pena v. Pena, res. el 15 de junio de 2005, 2005 T.S.P.R. 84; Ortiz García v. Meléndez Lugo, res. el 3 de marzo de 2005, 2005 TSPR 19.

En resumen, bajo la Ley para el Bienestar y Protección Integra de la Niñez, ante, el Departamento de la Familia ciertamente está facultado para solicitar que se prive de la custodia de un menor a uno o ambos de sus progenitores o cualquier otra persona que la ostente. De modo que el procedimiento de privación de custodia presupone que los

progenitores, o la persona o personas de que se trate, en efecto tengan la custodia del menor.


III

Debemos resolver si la disposición contenida en el Artículo 107 del Código Civil, ante, hace obligatorio que un tribunal conceda la custodia de un menor al cónyuge sobreviviente de modo que sea necesario instar un procedimiento para privarlo de ella. El referido Artículo dispone que:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos.

> El cónyuge que haya sido privado de la custodia y la patria potestad tendrá derecho a recobrarlas si acreditare ante cualquier sala competente del Tribunal Superior el fallecimiento del otro ex cónyuge o demostrase a satisfacción del tribunal que a los mejores intereses y bienestar de los menores conviene la referida recuperación de la custodia y la patria potestad. (. . .) (Énfasis nuestro)(citas omitidas).

La redacción original del mencionado Artículo disponía que, en los casos de divorcio, la custodia y patria potestad de los hijos menores se adjudicarían al cónyuge inocente. Este Artículo fue enmendado por la Ley Núm. 100 de 2 de junio de 1976, a los fines de reconocer a cualquiera de los padres la posible adjudicación de la

custodia y patria potestad de los hijos menores después del divorcio. <u>Milán Rodríguez</u> v. <u>Muñoz</u>, 110 D.P.R. 610 (1981). En esencia, dicha Ley eliminó todo lo relacionado respecto a la culpa de cualquiera de los cónyuges al momento de adjudicar la patria potestad y custodia, <u>y proclamó como norma el bienestar del menor</u>. Véase: <u>Chévere</u> v. <u>Levis</u>, 150 D.P.R. 525 (2000); <u>Nudelman</u> v. <u>Ferrer Bolívar</u>, 107 D.P.R. 495, 508 (1978); <u>Marrero Reyes</u> v. <u>García Ramírez</u>, 105 D.P.R. 90, 104 (1976).

La Exposición de Motivos de la referida pieza legislativa dispone la norma del mejor bienestar del menor como guía a los tribunales al momento de la adjudicación de la custodia y/o patria potestad del menor. A esos efectos dispone que el menor tiene derecho a gozar de la vida más saludable y satisfactoria posible luego del divorcio de sus padres y a quedar lo menos afectado posible por el mismo. "Esto sólo se logrará tomando la determinación sobre su custodia y patria potestad <u>en base a sus mejores intereses y bienestar</u> y no en base a cuál de sus padres fue decretado "inocente". *Ibid.*

El primer párrafo del citado Artículo 107 reconoce la facultad de los tribunales de adjudicar la custodia de menores, luego del divorcio de sus padres, a aquél que entienda que mejor atenderá sus necesidades. El segundo párrafo dispone que el cónyuge o padre que hubiere "perdido" la custodia o patria potestad de los hijos luego del divorcio, tendrá derecho a recobrarla si acredita ante

el tribunal el fallecimiento del otro ex cónyuge. Somos del criterio que dicha disposición responde a la política pública legislativa de que todo menor de edad siempre tenga un hogar y personas que velen por su cuidado y bienestar físico y emocional.

Ciertamente, el padre sobreviviente, quien tiene vínculos de sangre y amor con dicho menor, puede ser la persona más idónea para llevar a cabo dicha tarea. Lamentablemente, por distintas circunstancias, eso no es así en todos los casos. Por ello, en muchas ocasiones, algunas ajenas a procedimientos de divorcio, los tribunales se han visto en la necesidad de conceder la custodia de menores a personas distintas de los padres cuando consideran que éstos no están capacitados para brindar el cuidado de sus hijos.

Ante estas circunstancias nos preguntamos: ¿debe interpretarse el referido Artículo a los efectos que, con únicamente acreditarse la muerte del ex cónyuge, el tribunal debe adjudicar la custodia automáticamente al cónyuge sobreviviente? Contestamos en la negativa.

En Ex parte Torres, 118 D.P.R. 469 (1987), señalamos que el referido estatuto reiteraba e incorporaba la norma judicial predicada en la máxima del poder de *parens patriae* y, citando el caso de Rodríguez v. Gerena, 75 D.P.R. 900, 901-902 (1954) este Tribunal expresó que el Artículo 107 del Código Civil, ante, no destruía o restringía el poder de los tribunales para adoptar las medidas necesarias en

cuanto a la custodia de los hijos menores de edad, con el fin de lograr y proteger su bienestar y sus mejores intereses.

Como vemos, la aplicación del referido Artículo está subordinada a la responsabilidad del Estado de velar por que, luego de la ruptura matrimonial, los menores de edad permanezcan con la persona que mejor pueda cuidarlos. Esto se desprende claramente del primer párrafo del Artículo 107, ante. Por ello, un tribunal no puede hacer una aplicación automática del segundo párrafo del mismo, y otorgar la custodia de un menor al ex cónyuge sobreviviente, desligando dicha decisión de factores de alta importancia.[3]

Es decir, la decisión de un tribunal, en torno a la custodia de un menor, es una a la que se debe llegar luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo como único y principal objetivo el bienestar de los menores. Ortiz García v. Meléndez Lugo, ante; Santana v. Osorio, 116 D.P.R. 298, 301 (1985). La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual. Ortiz García v.

_____

[3] A modo de ejemplo, el propio Artículo 107, ante, dispone que en todos los casos de custodia y patria potestad se podrá considerar el historial de conducta previa de violencia doméstica de los progenitores.

Meléndez Lugo, ante; Nudelman v. Ferrer Bolívar, ante, a la pág. 511.

Hemos establecido en el pasado, que para poder determinar que un dictamen judicial, referente a la custodia de un menor, redunde en el mayor bienestar del menor es preciso examinar, entre otros, los siguientes factores: la preferencia del menor, su sexo, edad y la salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. Ortiz García v. Meléndez Lugo, ante; Marrero Reyes v. García Ramírez, ante.

En fin el Artículo 107, ante, consagra el poder que tienen los tribunales para hacer adjudicaciones de custodia; dicho poder tiene su génesis en el ejercicio por los tribunales del poder de parens patriae, el reconocido poder del Estado de proteger a los incapaces. Este poder de parens patriae limita los derechos de otras partes, a fin de salvaguardar el bienestar de los menores. Véase: Ortiz García v. Meléndez Lugo, ante. (Énfasis nuestro).

En otras palabras, el Artículo 107, ante, no presupone, de ninguna forma, que ante la muerte de uno de los ex cónyuges, la custodia de éste recaerá,

automáticamente y en ausencia de otras consideraciones, en el ex cónyuge sobreviviente que así lo solicite. El referido Artículo no puede interpretarse a los efectos que la custodia de un menor será "transferida", automáticamente, al cónyuge sobreviviente sobrepasando la obligación del tribunal de velar que dicha decisión sea la que verdaderamente opera en beneficio del menor.

IV

En el presente caso, el tribunal apelativo intermedio determinó que, ante la muerte de la madre de la menor, Morales Martínez tenía un "derecho" de custodia sobre su hija. Indicó, que para que la custodia pudiese ser concedida a los tíos, el caso tenía que transformarse en uno de privación de custodia instado bajo la Ley para el Bienestar y Protección Integral de la Niñez, ante. Indicó además, que de no iniciarse este procedimiento, la niña debía ser puesta bajo la custodia de su padre. Erró al así decidir.

En la sentencia de divorcio del Tribunal de Primera Instancia éste concedió a las partes la patria potestad de ambos hijos menores de edad de forma compartida. La custodia sobre la menor en cuestión fue concedida únicamente a la madre. De modo que, a la fecha de la solicitud de custodia presentada por los hermanos de María Rivera Aponte, Luis Morales Martínez era el padre con patria potestad --pero sin ostentar la custodia-- sobre su

hija. Aun cuando --tal y como podía hacerlo-- Morales Martínez solicitó la custodia de la menor al amparo del Artículo 107, ante, esto <u>no</u> significaba que la misma correspondía automáticamente a éste.

Resulta necesario enfatizar que en el presente caso, <u>por existir imputaciones de actos lascivos e impúdicos contra el padre de la menor</u>, y conforme a las recomendaciones de la trabajadora social que atiende el caso y los psiquiatras que han evaluado a la menor, las relaciones paterno filiales entre Morales Martínez y su hija quedaron suspendidas desde el 1998. Ante esta situación, y tomando en cuenta el bienestar de la menor, el foro primario refirió la petición de custodia presentada por los tíos de ésta a la Oficina de Relaciones de Familia para que investigara si éstos ofrecían un ambiente de crianza saludable para la menor. El foro primario, en protección de la menor, no confirió su custodia al padre. Y es que, <u>ante los hechos particulares del presente caso</u>, dicho foro no podía actuar de otra forma. Su actuación fue una correcta.

En vista de que, repetimos, el Artículo 107 <u>no</u> confiere automáticamente la custodia de la menor al padre, por el hecho de la muerte de la madre, <u>resolvemos</u> que el presente caso no tiene por qué convertirse en un procedimiento de privación de custodia. En vista de ello, resultaba innecesario que se instara un procedimiento de privación de custodia al amparo de la Ley para el Bienestar

y Protección Integral de la Niñez, ante. <u>¿Para qué iniciar un procedimiento de privación de custodia contra alguien que no la tiene</u>?

Por otro lado es menester aclarar, que el hecho que Morales Martínez sea el padre con patria potestad sobre la menor <u>no implica que este tenga derecho a tener la custodia sobre ésta</u>. "No empece la relación constitutiva entre la patria potestad y la custodia y la norma general que establece que "aquél que ostente la patria potestad también tiene la custodia"[4] […], <u>nuestro ordenamiento jurídico provee para que en determinadas circunstancias pueda separarse la custodia de la patria potestad con el fin de garantizar el bienestar del menor</u>." Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, San Juan, Ed. Programa de Educación Jurídica Continua Universidad Interamericana, 2002, Vol. II, págs. 1301-1308. (citas omitidas).[5]

Además, analizada la Ley para el Bienestar y Protección Integral de la Niñez, ante, <u>no</u> encontramos disposición alguna que haga obligatoria la intervención del Departamento de la Familia en el presente caso, o que sea a

---

[4] Citando a <u>Ex Parte Torres</u>, ante.

[5] "En el ordenamiento jurídico puertorriqueño podemos apreciar un proceso paulatino de <u>desvinculación entre la patria potestad y la custodia</u>. Este proceso ha sido impulsado por la introducción del criterio del bienestar del menor como norte en las determinaciones judiciales de custodia y por las reformas que ha sufrido la normativa sobre el divorcio en torno al concepto de la culpa y sus consecuencias." <em>Ibid</em>, a la pág. 1308. (Énfasis nuestro).

través de dicha agencia que se tramite la petición de custodia presentada por los tíos de la menor. En la eventualidad que la Oficina de Relaciones de Familia rinda un informe en el que favorezca la adjudicación de la custodia a Carlos E. Rivera Aponte y Nydia Rivera Aponte, el tribunal podría, conforme al mismo, hacer dicha adjudicación. Ello, independientemente que Morales Martínez sea el padre con patria potestad sobre la menor y sin que se hubiera iniciado procedimiento alguno bajo la Ley para el Bienestar y Protección Integral de la Niñez, ante. Erró el foro apelativo al hacer una determinación contraria.

Por los fundamentos antes expuestos procede dictar Sentencia <u>revocatoria</u> de la emitida en el presente caso por el Tribunal de Apelaciones. Se instruye a la Oficina de Relaciones de Familia a continuar evaluando el caso y a emitir el correspondiente informe al Tribunal de Primera Instancia sobre la petición de custodia presentada por Carlos E. Rivera Aponte y Nydia Rivera Aponte, para que este foro determine si procede concederles a éstos la custodia legal de la menor, ello en protección del mejor bienestar de la menor.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Migdalia Rivera Aponte

    Demandante

      vs.

Luis Antonio Morales Martínez

                    CC-2004-1023    CERTIORARI

    Demandado

Carlos E. Rivera Aponte,
Nydia Rivera Aponte

    Interventores-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 3 de marzo de 2006

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones. Se instruye a la Oficina de Relaciones de Familia a continuar evaluando el caso y a emitir el correspondiente informe al Tribunal de Primera Instancia sobre la petición de custodia presentada por Carlos E. Rivera Aponte y Nydia Rivera Aponte, para que este foro determine si procede concederles a éstos la custodia legal de la menor, ello en protección del mejor bienestar de la menor.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre en el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo