# 2009 DTA 75

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**
**PANEL ESPECIAL**

MICHAEL RODRÍGUEZ
Demandante-Apelante

v.

SAMIRA HERNÁNDEZ, DORIS AVILÉS
Demandados-Apelados

Núm. KLAN-2009-00316

San Juan, Puerto Rico, a 5 de mayo de 2009

Panel integrado por su Presidente, el Juez Aponte Hernández,
y los Jueces Escribano Medina y Miranda De Hostos

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, señor Michael Rodríguez, nos solicita que revoquemos la sentencia emitida el 7 de enero de 2009 por el Tribunal de Primera Instancia, Sala de Arecibo. Mediante la misma, dicho foro concedió la custodia de la hija del apelante a su abuela materna, señora Doris Avilés.

Por los fundamentos que expondremos, se confirma la sentencia apelada.

### I

El señor Michael Rodríguez y la señora Samira del Mar Hernández contrajeron matrimonio el 4 de enero de 1997, en Brooklyn, New York. Como producto de la unión, procrearon una hija de nombre Desiré-Darei Rodríguez Hernández que nació el 10 de febrero de 1999 en Brooklyn, New York. La abuela materna, señora Doris Avilés, vivió junto a la menor en el hogar de los padres en Estados Unidos.

Cuando la niña tenía tres años de edad, ésta se trasladó junto con su abuela materna a vivir a Puerto Rico. Desde entonces, reside bajo el cuido de ésta.

El 17 de septiembre de 2007, el Sr. Rodríguez presentó ante el Tribunal de Primera Instancia, Sala de Arecibo, una petición de custodia en contra de la Sra. Hernández. Alegó, que las partes se divorciaron el 19 de julio de 2007, que el decreto de divorcio nada dispuso en relación con la custodia de la menor, que ésta reside con su abuela materna en el Barrio Puente Peña de Camuy Puerto Rico, que desconocía el paradero de la Sra. Hernández y que, por tal razón, procedía que se le concediera la custodia de la niña. Arguyó, que vive en el estado de la Florida, que posee un empleo permanente y una residencia donde la menor tendría su propio cuarto, que estaba en gestiones para matricularla en una escuela cerca de su residencia, que se encuentra comprometido en matrimonio y que dicha unión le proveerá estabilidad a la menor. El 16 de noviembre de 2007, enmendó la petición para incluir como demandada a la abuela materna.

El 30 de noviembre de 2007, el Sr. Rodríguez presentó *Urgente Moción en Solicitud de Auxilio del Tribunal y Orden*. Informó que advino en conocimiento de que al día siguiente -1 de diciembre de 2007-, la abuela materna se trasladaría a vivir fuera de Puerto Rico junto con la menor y que, por instrucciones de la Sra. Hernández, ésta se negaba a informarle la dirección de la residencia a donde se llevaría a la niña. Solicitó que se emitiera una orden que prohibiera sacar a la menor del país y que apercibiera a la abuela materna de su obligación de informar al padre de la menor cualquier cambio de dirección o número de teléfono donde ésta se encontrare.

El 30 de noviembre de 2007, el TPI emitió la orden que se transcribe a continuación:

"Vista la Urgente Moción en Solicitud de Auxilio del Tribunal y Orden sometida por el Demandante Michael Rodríguez en que se solicita que se le ordene a la Sra. Doris Avilés que no pueda trasladar a la menor Desiré Hernández fuera de Puerto Rico, se declara la misma Ha Lugar y en su consecuencia se le ordena a la

Sra. Avilés, la Sra. Samira del Mar Hernández, así como cualquier otra persona, a que mantenga a la menor dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y que en caso de que quiera trasladarla fuera de la isla, tendrá que solicitar autorización de este Tribunal, esto so pena de desacato. Esta orden tendrá un efecto provisional, hasta tanto este Tribunal determine a quién le otorgará la custodia de la menor en este caso. De la misma manera se le ordena a la Sra. Doris Avilés a que provea al padre de la menor todas aquellas direcciones en las que pudiera encontrarse la misma, para facilitar la comunicación con su hija."

El 26 de febrero de 2008, la abuela materna presentó contestación a la demanda en la cual negó las alegaciones esenciales. En el mismo escrito, mediante reconvención, solicitó que se le adjudicara a ella la custodia de la menor. Asimismo, presentó demanda contra tercero en contra de la Administración para el Sustento de Menores (ASUME) para que dicha agencia fijara al Sr. Rodríguez el pago de una pensión alimentaria a favor de la niña. [1]

El TPI celebró una vista el 17 de abril de 2008. La abuela materna compareció junto con su representación legal. El Sr. Rodríguez no compareció, pero sí su representación legal. La Sra. Hernández compareció por derecho propio. [2] Durante la vista, la representación legal del Sr. Rodríguez solicitó que se le permitiera a su representado comunicarse vía telefónica con la menor. Ante tal solicitud, la abuela materna manifestó que la menor se asustaba cuando el Sr. Rodríguez se comunicaba vía telefónica. El TPI resolvió lo siguiente:

"Se ordena a la Oficina de Relaciones de Familia a realizar un estudio social a las partes y se deberá someter el informe correspondiente dentro de sesenta días laborables. Además, se deberá hacer el correspondiente estudio interagencial. Se le ordena como parte de su evaluación se haga una determinación preliminar para ver si se pueden dar relaciones paterno-filiales vía telefónica, luego de entrevistar a la señora Avilés y a la menor.

Se determina que la custodia de la menor D.D.R. la tiene la Sra. Doris Avilés."

El 11 de junio de 2008, la Supervisora de Trabajo Social de la Unidad Social de Relaciones de Familia y Menores, Sra. Brenda I. Class Jurado, presentó *Moción Informando Asignación de Caso*. Informó, que le asignó el caso a la trabajadora social Olinda Rivera López. Además, advirtió que no había un acuerdo de reciprocidad con el Estado de la Florida para hacer estudios interagenciales, por lo que correspondía al Sr. Rodríguez costear el estudio interagencial ordenado.

El 25 de junio de 2008, el TPI ordenó al Sr. Rodríguez hacer las gestiones para el estudio interagencial.

El 2 de julio de 2008, la trabajadora social Olinda Rivera López presentó *Moción Informativa* en la que advirtió que no recomendaba, por el momento, las relaciones paterno filiales vía telefónica porque éstas podrían atentar contra la salud emocional de la menor. Informó, además, haber notificado al Sr. Rodríguez el procedimiento a seguir para completar el estudio interagencial.

El 1 de agosto de 2008, el Sr. Rodríguez presentó *Urgente Moción Solicitando Relaciones Paterno-Filiales Durante el Período Navideño*. Mediante orden de 11 de agosto de 2008, el TPI declaró no ha lugar la solicitud y concedió un término final de 15 días al Sr. Rodríguez para cumplir con el requerimiento del estudio interagencial.

El 23 de septiembre de 2008, el TPI emitió orden mediante la cual se dio por enterado del estudio social presentado por la trabajadora social y autorizó a los abogados a examinar el mismo. [3] En esa misma fecha, emitió otra orden en la que pautó para el 20 de noviembre de 2008 la vista para discutir el estudio social.

El 20 de noviembre de 2008 se celebró la vista. La abuela materna compareció junto con su representación

legal. El Sr. Rodríguez no compareció, pero sí su representación legal. Se contó con los testimonios de la abuela materna y de la trabajadora social Olinda Rivera López. El Sr. Rodríguez no presentó el estudio interagencial ordenado. **[4]**

El 3 de diciembre de 2008, el TPI celebró una vista en la cual, entre otros asuntos, declaró no ha lugar una solicitud de la abuela materna para trasladarse fuera de Puerto Rico con la menor. También, declaró no ha lugar la solicitud de reconsideración presentada por el Sr. Rodríguez para que el TPI pospusiera la determinación sobre custodia hasta que dicha parte examinara el informe social. Aclaró que el Sr. Rodríguez no acudió a examinar dicho estudio -pesar de que se le notificó la autorización para hacerlo desde el 16 de septiembre de 2008- como tampoco informó si se allanaba o no al mismo. **[5]**

El 7 de enero de 2009, el TPI dictó sentencia. Entre sus determinaciones de hechos estableció como hechos probados que:

"[…]

3. El padre vino a Puerto Rico en marzo de 2007 y se relacionó con la menor. Lo acompañó su actual esposa. Fueron al cine, al Mall y a la playa, en los cuatro o cinco días que estuvo visitándola. La abuela estuvo presente en todas esas actividades.

4. El padre se comunicó vía cartas con la menor en otras ocasiones y la menor le contestó algunas de las cartas. También se comunicó vía teléfono con la menor, pero desde hace varios meses la menor no desea comunicarse con su padre.

5. La T.S. Olinda Rivera, de la Oficina de Relaciones de Familia del Tribunal, informó que como parte de su estudio entrevistó a la abuela y a la menor y las refirió a ambas al psicólogo de la Clínica de Diagnóstico y Tratamiento de la Rama Judicial donde la evaluó el Dr. José Bestard. Además, visitó el hogar de la abuela y la escuela, donde se entrevistó con la trabajadora social escolar. Encontró que el hogar es adecuado y que entre la abuela y la menor existe apego y una relación de confianza de menor hacia abuela. Esto lo pudo observar de una entrevista conjunta que llevó a cabo. La T.S. escolar, Evelyn Soto, le mencionó que la menor es responsable, asiste con regularidad, tiene buena conducta y que existe apego entre abuela y menor y le refirió que la abuela es madre voluntaria en la escuela y coopera con ellos.

Se le preguntó a la T.S. sobre las evaluaciones del psicólogo y ésta indicó que sobre la abuela el psicólogo dice en su informe que posee la madurez para velar por los mejores intereses de la menor y debe conservar la custodia de la menor. En cuanto a la menor, éste indicó en su informe que ésta no se siente confiada en su relación con el padre y que le teme. Recomienda que la menor reciba terapias psicológicas para superar la percepción negativa que tiene del padre y no recomienda que se den relaciones paterno-filiales hasta que se certifique su progreso. Indicó, además, la T.S. que la menor refiere que le teme a su papá, que apenas lo conoce y que lo vio por primera vez desde que era pequeña cuando él vino a Puerto Rico, que según informó la abuela a la T.S., fue en marzo de 2007.

También informó la T.S. que la menor le indicó que habla con su mamá, quien vive en Carolina del Norte con otros dos hijos menores que Desiré, todos los días vía teléfono y que ansía ir a vivir junto a su madre y hermanos.

Además, de la entrevista individual con la menor, le suministró dos pruebas: el dibujo de la familia y la de oraciones incompletas. En la prueba del dibujo incluyó a la abuela, mamá y hermanos.

A juicio de la T.S., las expresiones de la menor no son producto de la manipulación.

Su recomendación es que la abuela conserve la custodia y que conforme a lo indicado por el psicólogo las relaciones paterno-filiales no se lleven a cabo hasta después que la menor reciba las terapias dirigidas a mejorar la percepción negativa que la menor tiene de su padre.

6. La Sra. Doris Avilés, abuela materna de la menor, corroboró que la menor le tiene miedo al padre. Informa que la menor se rehúsa a hablar con el padre vía teléfono. Identificó dos cartas que la mejor le escribió al padre, una en marzo de 2006 y otra el 7 de agosto de 2006. Habló de otra carta que la menor le escribió al padre, pero no se indicó fecha, aunque fue posterior a las mencionadas.

El padre vino de visita a Puerto Rico por una semana en marzo de 2007. Visitó el hogar de la abuela cuatro o cinco veces en ese tiempo. Durante esos días visitaron el "Mall", el cine y la playa. Estuvieron juntos en todas las actividades menor y abuela, así como el padre y su esposa actual. De las fotos que le mostraron sobre dichas actividades indicó que la menor estaba contenta.

La Sra. Avilés indicó, a preguntas de cómo mantiene a la menor, que recibe cupones de alimentos, ayuda de Servicios Sociales y que la madre de la menor le envía dinero para ayudarla. En cuanto a ayuda económica por parte del padre indicó que él no aporta nada. Aclaró que es su deseo poder llevar a la menor a vivir con su hija y la familia de ésta en Carolina del Norte.

7. Además de la prueba sometida en Sala, se entrevistó a la menor en cámara. Los abogados de ambas partes tuvieron la oportunidad de hacerle preguntas a la menor. La niña confirmó lo indicado tanto por la T.S. Rivera como por la abuela, de que le tiene miedo al padre. A preguntas de los abogados indicó que no desea visitarlo. Quiere estar con su mamá y hermanos y tiene coraje con su padre porque no le permitió viajar a verlos en las navidades pasadas."

A la luz de las circunstancias, el TPI concluyó que no podía conceder la custodia de la menor al Sr. Rodríguez y concedió la custodia a la abuela materna. Subrayó que "el hecho de que no tuvimos ante nosotros el estudio interagencial no varía nuestra determinación". También, ordenó que la Oficina de Relaciones de Familia del Tribunal coordinara con la abuela materna las terapias recomendadas y que se informara al tribunal los resultados de las mismas en un plazo de seis meses. La sentencia se archivó en autos y se notificó el 9 de enero de 2009.

El 20 de enero de 2009, el Sr. Rodríguez presentó *Solicitud de Determinaciones de Hechos y de Derecho Adicionales*, la cual fue declarada no ha lugar mediante resolución de 30 de enero de 2009.

Inconforme, oportunamente, el Sr. Rodríguez acude ante nos y señala que:

"Erró el Tribunal de Primera Instancia al no permitirle al recurrente llevar a cabo un estudio social, aun cuando se informó al tribunal las dificultades para poder conseguir un trabajador social en Florida, Estados Unidos de América.

Erró el Tribunal de Primera Instancia al no permitirle al Sr. Michael Rodríguez realizar un descubrimiento de prueba de acuerdo con el debido proceso de ley, y entrar en los méritos de una vista en su fondo sin que el demandante pudiera realizar su descubrimiento de prueba para presentar prueba a su favor.

Erró el Tribunal de Primera Instancia al otorgar la custodia de la menor DRH basando su determinación en el informe social que contenía recomendaciones provisionales y que nunca fue sometido como evidencia por la demandada recurrida."

Conjuntamente con el recurso, el apelante presentó *Moción Solicitando Auxilio de Jurisdicción* en la que

solicitó que decretáramos la paralización de los procedimientos ante el TPI debido a que la abuela materna nuevamente solicitó permiso del tribunal para mudarse con la niña fuera de la jurisdicción de Puerto Rico. Mediante resolución emitida el 6 de marzo de 2009, declaramos no ha lugar la moción solicitando auxilio de jurisdicción y concedimos un término de 20 días a la parte apelada para presentar su alegato. Luego de conceder la prórroga solicitada, la abuela materna, señora Doris Avilés, presentó *Réplica a Apelación*.

El 15 de abril de 2007, el Sr. Hernández presentó *Reiterada Moción en Auxilio de Jurisdicción*. Alegó que el 27 de marzo de 2009, el TPI emitió una orden mediante la cual pautó para el 6 de mayo de 2009 la vista para discutir la solicitud para trasladarse fuera de Puerto Rico presentada por la abuela materna. Solicitó, nuevamente, que decretáramos la paralización de los procedimientos ante el TPI. El 24 de abril de 2009, presentó *Urgente Moción en Solicitud de Orden* en la cual solicitó que emitiéramos orden que se adjudicara la solicitud de paralización.

Mediante resolución emitida el 27 de abril de 2009, declaramos no ha lugar la *Reiterada Moción en Auxilio de Jurisdicción* y la *Urgente Moción en Solicitud de Orden* presentadas por el Sr. Rodríguez.

El 2 de mayo de 2009, la abuela materna, Sra. Avilés, presentó *Moción Urgente en Auxilio de Jurisdicción*. Alegó, que mediante orden notificada el 14 de abril de 2009, el TPI indicó que la controversia sobre pensión alimentaria debe tramitarse a través de ASUME. Solicitó que en la vista pautada para discutir la solicitud de traslado, también se resolviera la controversia de pensión alimentaria.

## II

El derecho constitucional de los padres sobre la crianza de sus hijos se refiere al hecho de que los padres, de ordinario, tienen derecho a decidir sobre el cuido, la custodia y el control de sus hijos. Claro está, este derecho no es absoluto y puede ser limitado en aras al interés apremiante del Estado en proteger el bienestar de los menores. *Estrella, Monge v. Figueroa Guerra*, 170 D.P.R. ___, **2007 J.T.S. 62**, pág. 1114.

Un tribunal debe llegar a la decisión en torno a la custodia de un menor luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo como único y principal objetivo el bienestar de los menores. La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual. *Rivera v. Morales*, 167 D.P.R. 280, 293 (2006).

Para poder determinar que un dictamen judicial referente a la custodia de un menor redunde en el mayor bienestar de éste es preciso examinar, entre otros, los factores siguientes: la preferencia del menor; su sexo; su edad; su salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor, el grado de ajuste del menor al hogar, a la escuela y a la comunidad en que vive; la interrelación del menor con las partes, con sus hermanos y con otros miembros de la familia, y la salud psíquica de todas las partes. *Id*.

El Artículo 107 del Código Civil, 31 L.P.R.A. sec. 383, consagra el *poder que tienen los tribunales para hacer adjudicaciones de custodia;* dicho poder tiene su génesis en el ejercicio por los tribunales del poder de *parens patriae*, el reconocido poder del Estado de proteger a los incapaces. Este poder de *parens patriae* limita los derechos de otras partes para salvaguardar el bienestar de los menores. *Id*., pág. 294.

Respecto al sereno y cuidadoso análisis de todas las circunstancias para determinar a quién se le concede la custodia, nuestro Tribunal Supremo ha expresado que:

"Ningún factor es de por sí decisivo. Hay que sopesarlos todos para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en un asunto de tan extrema dificultad." [Citas

omitidas.]

*Maldonado v. Burris*, 154 D.P.R. 161, 167 (2001).

Existe un interés social de que los padres se relacionen con sus hijos menores, una vez el tribunal tome las medidas necesarias para garantizar un ambiente de seguridad y bienestar para los mismos. Ahora bien, no es el derecho de los padres a relacionarse con los hijos el criterio decisivo en los casos de custodia, sino el mejor bienestar de los hijos menores. *Maldonado v. Burris, supra,* pág. 168.

Por último, la apreciación de prueba realizada por el juzgador de primera instancia merece deferencia por los tribunales apelativos; sus determinaciones deben ser respetadas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Viruet Camacho,* 173 D.P.R. ___, **2008 J.T.S. 80**, pág. 1101; *Pérez Rosa v. Morales Rosado,* 172 D.P.R. ___, **2007 J.T.S. 176**, pág. 208. En nuestra función apelativa se impone la doctrina de deferencia la cual nos exige el no intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto, en la apreciación de la prueba. *López v. Dr. Cañizares,* 163 D.P.R. 119 (2004); *Belk v. Martínez,* 146 D.P.R. 215, 232 (1998).

## III

En su primer señalamiento de error, el Sr. Rodríguez sostiene que no fue hasta la fecha de la vista en su fondo -20 de noviembre de 2008- que pudo conseguir una trabajadora social -de nombre María Álvarez- que estuviera dispuesta a realizar el estudio interagencial y que ésta solicitó un término de 45 días para completar el estudio. Aduce que así lo informó al tribunal y argumenta que dicho foro debió examinar el mencionado estudio antes tomar una determinación sobre custodia.

La petición de custodia se presentó el 17 de septiembre de 2007. El 17 de abril de 2008, el TPI ordenó a la Oficina de Relaciones de Familia que realizara el estudio interagencial. El 11 de junio de 2008, la Supervisora de Trabajo Social de Relaciones de Familia y Menores informó que en el estado de la Florida no hay un acuerdo de reciprocidad para hacer estudios interagenciales y que correspondía al Sr. Rodríguez costear el estudio interagencial ordenado. El 25 de junio de 2008, el TPI ordenó al Sr. Rodríguez hacer las gestiones para el estudio interagencial. El 2 de julio de 2008, se le indicó cuál era el procedimiento a seguir para completar el estudio. El 11 de agosto de 2008, el TPI concedió al Sr. Rodríguez un término final de 15 días para cumplir con el requerimiento del estudio. La vista se celebró el 20 de noviembre de 2008 y fue entonces cuando el Sr. Rodríguez alega haber informado las dificultades para presentar el estudio ordenado.

De esta forma, pasaron aproximadamente cuatro meses desde que se le ordenó por primera vez al Sr. Rodríguez que presentara el estudio -25 de junio de 2008- hasta que se celebró la vista en su fondo -20 de noviembre de 2008. La petición de custodia se adjudicó el 7 de enero de 2009. Todavía a esa fecha, el Sr. Rodríguez no había presentado el estudio ordenado ni había informado el progreso del mismo, a pesar de que habían transcurrido más de los 45 días solicitados para completar el mismo.

De la investigación realizada por la trabajadora social Olinda Rivera López, según le fue requerido por el TPI, surge que no hay indicadores o evidencia de maltrato o negligencia por parte de la abuela materna hacia la menor. Por el contrario, se encontró que existe apego entre la menor y la abuela materna, que la menor asiste regularmente a la escuela y que es responsable. En cuanto a la abuela materna, se indicó que ésta posee la madurez para velar por los mejores intereses de la menor. Igualmente, la menor declaró que le tiene miedo a su padre, que apenas lo conoce y que no desea visitarlo.

Nada nos inclina a pensar o concluir que concederle la custodia de la menor a su abuela materna atente contra la seguridad emocional, física o económica de ella, o que fuese a carecer de los servicios esenciales y

básicos para una buena calidad de vida. La abuela materna informó que cuenta con la ayuda económica de cupones de alimentos, Servicios Sociales y la madre de la menor. La trabajadora social recomendó que la abuela materna conserve la custodia y que la menor recibiera terapias psicológicas para cambiar la percepción negativa que tiene de su padre.

Por lo cual, dadas las circunstancias particulares del caso, no era necesario el estudio interagencial antes de conceder la custodia de la menor a su abuela materna.

En su segundo señalamiento de error, el Sr. Hernández plantea que no se le permitió realizar un descubrimiento de prueba adecuado, todo ello en menoscabo de las garantías del debido proceso de ley. Específicamente, arguye que no se le dio la oportunidad de anunciar su deseo de objetar el informe social, ni se le informó la evidencia que se presentaría en su contra. Por ello, argumenta, que no tuvo la oportunidad de deponer, entrevistar o interrogar al Dr. José E. Bestard, psicólogo de la Clínica de Diagnóstico y Tratamiento de la Rama Judicial, quien evaluó el caso e hizo unas recomendaciones, las cuales fueron incluidas en el informe de la trabajadora social.

Desde el punto de vista constitucional, las decisiones judiciales sobre patria potestad y custodia de hijos menores se han basado primordialmente en el interés libertario del padre o de la madre protegido por la Cláusula de Debido Proceso de Ley. La esencia de protección del debido proceso de ley es que el procedimiento seguido sea justo y equitativo. Sin embargo, ello se determina a partir de las circunstancias de cada caso. El principio fundamental del debido proceso de ley es el derecho de toda persona a ser oído antes de ser despojado de un interés protegido. *Asoc. Vec. Villa Caparra v. Asoc. Fomento Educativo,* 173 D.P.R. ___, **2007 J.T.S. 68,** pág. 956.

Las exigencias mínimas del debido proceso de ley constitucional incluyen la oportunidad de ser oído, el derecho a contrainterrogar y el derecho de examinar la evidencia presentada por la parte contraria. *San Gerónimo Caribe Proyect v. A.R.P.E.,* 174 D.P.R. ___, **2008 J.T.S. 150**, pág. 1700.

Mediante orden de 23 de septiembre de 2008, el TPI autorizó a los abogados a examinar el estudio social preparado por la trabajadora social designada al caso. [6] Transcurrido casi un mes y medio; esto es, el 20 de noviembre de 2008, se celebró la vista para discutir el mismo. Para ese entonces, el Sr. Rodríguez aún no había examinado el referido estudio. No fue hasta el 7 de enero de 2009 que el TPI emitió la sentencia en la cual acogió las recomendaciones del estudio social y concedió la custodia de la menor a la abuela materna. Esto fue, luego de haber permitido al Sr. Rodríguez impugnar el informe social de custodia y presentar su prueba. De esta forma, el TPI le brindó la oportunidad al Sr. Rodríguez de prepararse adecuadamente para poder rebatir el estudio social y de preparar su defensa. Por tanto, el proceso cumplió con las garantías del debido proceso de ley.

Por último, el Sr. Rodríguez aduce que la decisión del TPI se fundamentó en unas recomendaciones provisionales contenidas en un informe que no fue debidamente autenticado por la Sra. Avilés. En relación con este planteamiento, basta señalar que el informe social fue preparado por orden del tribunal en un ejercicio razonable de su poder de *parens patriae.* La Sra. Avilés no es la proponente del mismo, por lo que ésta no tenía que satisfacer el requisito general de autenticidad en cuanto a dicho documento.

Por otro lado, respecto a la solicitud que hace la Sra. Avilés mediante moción en auxilio de nuestra jurisdicción presentada el 2 de mayo de 2009 a los efectos de que dispongamos que la controversia de pensión alimentaria se resuelva conjuntamente con la solicitud de traslado, resolvemos que el asunto no es parte de la apelación ante nuestra consideración. Por tanto, declaramos la misma no ha lugar.

## IV

Por los fundamentos que anteceden, se confirma la sentencia apelada.

Notifíquese inmediatamente a las partes por teléfono o fax y posteriormente por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 75

1. La Sra. Hernández no presentó alegación responsiva.

2. Se le instruyó a la Sra. Hernández que si interesaba ser parte del caso, se orientara con un abogado.

3. Según consta en la minuta de la vista celebrada el 16 de septiembre de 2008, el TPI ya había autorizado la inspección.

4. En los autos no consta copia de la minuta de la vista celebrada el 20 de noviembre de 2008.

5. Páginas 129-133 del apéndice del recurso.

6. Cuando un informe de una agencia social es utilizado en una determinación de custodia, el foro de instancia está en la obligación de permitir a las partes examinar dicho informe y objetar al mismo o presentar prueba en contrario, si lo desean. *Colón v. Meléndez*, 87 D.P.R. 442 (1963).