Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ISRAEL MARTÍNEZ HERNÁNDEZ<br><br>Parte Apelante<br><br>v.<br><br>ABIGAIL CARABALLO VARGAS<br><br>Parte Apelada | KLAN202300580 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Familia y Menores-Bayamón<br><br>Civil núm.:<br>D CU2014-0322<br><br>Sobre:<br>Custodia |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2024.

Comparece el señor Israel Martínez Hernández (Sr. Martínez Hernández o apelante) y solicita que revoquemos la *Resolución* emitida el 4 de mayo de 2023, y notificada el 8 de mayo de 2023, por el Tribunal de Primera Instancia (TPI), Sala de Relaciones de Familia y Menores de Bayamón. Mediante el referido dictamen, el TPI autorizó a la madre custodia, señora Abigail Caraballo Vargas (Sra. Caraballo Vargas o apelada,) a trasladarse al Estado de Texas junto con los dos hijos menores de edad procreados por las partes.

Evaluada la solicitud del apelante, la oposición de la parte apelada, así como la transcripción de la prueba oral y los documentos que obran en autos, y por los fundamentos que se exponen a continuación, confirmamos el dictamen apelado.

## I.

El asunto ante nuestra consideración se originó el 14 de noviembre de 2022, cuando la Sra. Caraballo Vargas, quien ostenta la custodia monoparental de los dos hijos menores de edad procreados por las partes, presentó ante el TPI una *Solicitud de traslado permanente y provisional de conformidad con la Ley Núm.*

*102 del 2018.*[1] En ésta, informó y detalló que tiene una oferta atractiva de empleo para desempeñarse como "Mental Health Clinician" en la ciudad de San Antonio, Texas, Estados Unidos de América. Arguyó que la oferta de empleo era en extremo competitiva, en comparación con los salarios base de Puerto Rico, por lo que el traslado redundaría en una mejor calidad de vida para los menores. También, la señora Caraballo Vargas anunció en su petición la dirección del lugar de la nueva vivienda, la información completa de la escuela en la que estudiarían los menores y los potenciales lugares para su cuidado médico. En cuanto a las relaciones paternofiliales, la Sra. Caraballo Vargas propuso un plan estructurado con relaciones más amplias que las establecidas por el tribunal. Sin embargo, adujo que, por razones de su trabajo, el Sr. Martínez Hernández no posee el tiempo para ejercer los roles paternos. Además, alegó que éste se opone al traslado sin motivo o razón justificada.

La vista para atender la petición de la Sra. Caraballo Vargas se llevó a cabo de manera presencial los días 17 de marzo, y 3 y 17 de abril de 2023. Ambas partes comparecieron con sus representaciones legales. Durante la vista, el tribunal recibió el testimonio de ambas partes y admitió siete (7) documentos en evidencia[2].

---

[1] Apéndice del recurso, págs. 14-29.

[2] El TPI admitió y marcó en evidencia los siguientes documentos:
- Exhibit 1: Transcripción de notas del menor Israel con fecha del 1 de enero de 2023. Victory Academy. Un folio.
- Exhibit 2: Transcripción de créditos de la menor Melanie con fecha del 12 de enero de 2023. Victory Academy. Un folio.
- Exhibit 3: Boleta de notas de la menor Melanie para el año académico del 2021-2022. Asta Elemental. Un folio.
- Exhibit 4: "Welcome Letter" de Azul Apartments ubicados en la dirección 6674 Prue Road #8201, San Antonio TX 78240. Dos folios.
- Exhibit 5: Diploma de Maestría como "Clinical Social Work" a nombre de Abigail Caraballo Vargas, expedido por la Universidad Ana G. Méndez del mes de diciembre de 2021. Diploma de Bachillerato de trabajador social a nombre de Abigail Caraballo Vargas, expedido por la Universidad de Puerto Rico, Recinto de Río Piedras. Tres (3) folios.

El desfile de prueba comenzó con el testimonio del Sr. Martínez Hernández. Éste testificó que la señora Caraballo Vargas posee la custodia legal de los menores.[3] Indicó que se desempeña como *seaman* del United States Coast Guard, lo que le impide estar continuamente en Puerto Rico y lo obliga a delegar el cuido de sus dos hijos en los abuelos paternos, quienes, a su vez, son sus vecinos.[4] Admitió que no leyó la petición de relocalización, ni evaluó o investigó la propuesta de la señora Caraballo Vargas, debido a que no está de acuerdo con el traslado solicitado.[5] Como razones para su oposición, declaró que la Sra. Caraballo Vargas lo agredió en el 2014 y le ha negado acceso a los récords médicos de los menores.[6] Aseguró que los menores están mejor en Puerto Rico porque reciben educación escolar y las ayudas que necesitan para su desarrollo. Además, aseguró que los menores manifiestan sentimientos de apego hacia sus abuelos paternos.[7]

No obstante, el señor Martínez Hernández reconoció la pobre comunicación que tiene con la Sra. Caraballo Vargas.[8] Relató que ésta se fue de Puerto Rico en noviembre de 2023 y que, desde entonces, él se ha hecho cargo de los menores. Inclusive, los cambió de escuela.[9] Por otro lado, admitió que el abuelo y la tía maternos son la red de apoyo de la Sra. Caraballo Vargas y los menores.[10]

Por su parte, el testimonio de la Sra. Caraballo Vargas se centró en detallar lo expuesto en su solicitud de relocalización. En

---

- Exhibit 6: Offer Letter, Acceptance Offer, and Position Information como Mental Health Clinical. Vighter. Ocho (8) folios.
- Exhibit 7: Antilles Middle School Report Card 2022-2023 para los menores I.M.C. y M.M.C. Seis (6) folios.

[3] Transcripción de la prueba oral de la vista del 17 de marzo de 2023, pág. 35.
[4] *Íd.,* pág. 49, 53 y 106; Transcripción de la prueba oral de la vista del 21 de abril de 2023, págs. 30 y 32.
[5] Transcripción de la prueba oral de la vista del 17 de marzo de 2023, pág. 90-101; Transcripción de la prueba oral de la vista del 21 de abril de 2023, pág. 81.
[6] Transcripción de la prueba oral de la vista del 17 de marzo de 2023, pág. 114.
[7] *Íd.,* pág. 116.
[8] *Íd.,* pág. 108.
[9] *Íd.,* pág. 115.
[10] *Íd.,* pág. 127.

específico, declaró que en dicho documento proveyó la dirección de la vivienda propuesta, detalles del plano del apartamento, el contrato de alquiler y la carta de bienvenida al complejo de viviendas, así como ubicaciones circundantes de recreación, escuelas, hospitales y oficinas médicas.[11] Indicó que solicita autorización para relocalizarse con sus hijos en el Estado de Texas para mejorar la calidad de vida de su familia.[12] Al respecto, abundó en torno a su preparación académica, oferta de empleo de Texas, incluyendo salarios y beneficios, y la comparó con la oferta de empleo de Puerto Rico.[13] Afirmó que está casada con Javier Enrique Dávila Rosa, quien, al igual que ella, carece de antecedentes penales, trabaja como asistente de enfermería y representa una figura de apoyo emocional y económico para ella, los dos menores que procreó con el Sr. Martínez Hernández y la hija que tiene en común con su esposo.[14]

La Sra. Caraballo Vargas habló de las relaciones paternofiliales que propuso en su petición de relocalización, haciendo constar que es un plan más extenso que el plan de relaciones vigente. Indicó que no se opone a que el Sr. Martínez Hernández visite a los niños en Texas. Afirmó que, para atender los asuntos relacionados con los menores, las partes se comunican por correo electrónico y mensajes de texto.[15]

También, la Sra. Caraballo Vargas describió las condiciones clínicas y los servicios médicos que recibe la niña y aseveró que, desde enero de 2023, fecha desde la cual el Sr. Martínez Hernández retuvo a los menores bajo su cuido, no ha llevado a la niña a sus terapias.[16] Tampoco supervisó las tareas escolares de ninguno de

---

[11] *Íd.,* págs. 163-191.
[12] *Íd.,* págs. 193-194.
[13] *Íd.,* págs. 184-188, 195-199.
[14] *Íd.,* págs. 200-201; Trascripción de la prueba oral de la vista del 3 de abril de 2023, pág. 11.
[15] Trascripción de la prueba oral de la vista del 3 de abril de 2023, págs. 15-16.
[16] *Íd.,* págs. 18-22.

los menores, según corroboró cuando el Sr. Martínez Hernández le devolvió a los menores, en comparación con el progreso académico previo.[17] Señaló que el Sr. Martínez Hernández cambió a los niños de escuela sin su consentimiento.[18] A su vez, aseguró que, al reunificarse con los niños, observó que no hubo control sobre los celulares de los menores, debido a que encontró una fotografía pornográfica en el celular del niño. De igual forma, se percató que los menores vestían ropa de talla inadecuada.[19]

La Sra. Caraballo Vargas admitió que ya aceptó la oferta de empleo y trabaja en el Estado de Texas y que el abuelo materno de los menores también se mudará a dicho Estado.[20] También mencionó que no tiene comunicación efectiva con el Sr. Martínez Hernández y tampoco vislumbra que ésta mejore.[21] Por último, comparó los beneficios escolares y médicos que recibirían los menores en el Estado de Texas con los que reciben en Puerto Rico.[22] Reconoció la limitación del idioma, pero narró el proceso para superar dicha barrera.[23]

Basado en la credibilidad que le mereció la prueba recibida en sala, el 4 de mayo de 2023, el TPI dictó la *Resolución* recurrida. En ésta, consignó las siguientes determinaciones de hechos:

1. Las partes de epígrafe sostuvieron una relación consensual fruto de la cual procrearon a los menores M.A.M.C. de 13 años de edad y a I.M.C. de 11 años de edad.

2. La madre es quien ostenta la custodia física y legal de los menores desde su nacimiento, según se hace constar en la sentencia del 21 de diciembre de 2016.

3. El señor Martínez Hernández trabaja a tiempo completo para el US Coast Guard como "seamen". De su testimonio surge que en ocasiones tiene que estar por amplios periodos de tiempo en una embarcación al

---

[17] *Íd.,* págs. 23-24, 29-32, 43-45.
[18] *Íd.,* pág. 46.
[19] *Íd.,* pág. 47.
[20] *Íd.,* págs. 63 y 80.
[21] *Íd.,* págs. 70 y 81.
[22] *Íd.,* págs. 51-55.
[23] *Íd.,* págs. 27-28, 53.

menos una vez al mes. De ese periodo, Martínez está cuatro días en alta mar y tres días en puerto.

4. La señora Caraballo Vargas ostenta un bachillerato como trabajadora social de la Universidad de Puerto Rico, Recinto de Río Piedras, y una maestría como "Clinical Social Worker" de la Universidad Ana G. Méndez. Asimismo, posee una licencia permanente como trabajadora social desde el año 2019.

5. También manifestó que, una vez obtuvo su licencia profesional, comenzó una búsqueda activa de empleo y que para una trabajadora social con maestría los salarios promedios oscilan entre los $1,500 a $1,700.00 en Puerto Rico.

6. Expresó la señora Caraballo, además, que la última oferta de trabajo obtenido por el Departamento de la Familia redundaba en una paga de $100.00 por caso manejado y completado y que hasta tanto no completara el caso con archivo y cierre no tenía derecho a recobro alguno.

7. En o cercano al mes de octubre del 2022, la señora Caraballo recibió una oferta de empleo de Vighter como "Mental Health Clinician" a razón de $43.00 la hora, en el Estado de Texas. Indicó que, junto a su esposo, el ingreso combinado del hogar rondaría los $12,000.00 mensuales.

8. La señora Caraballo se encuentra casada con el señor Javier E. Dávila Rosa, quien al presente se desempeña como asistente de enfermero generando un ingreso mensual de $4,000 a $5,000 dólares mensuales.

9. Con el señor Dávila procreó otra menor de nombre Ema. También manifestó que Javier es una figura de apoyo para los menores, estudia con éstos, habla con los maestros y siempre ha compartido los asuntos educativos de dichos menores.

10. La peticionaria también indicó no contar con antecedentes penales y que igualmente su esposo, el señor Dávila no cuenta con antecedentes penales ni en Puerto Rico ni fuera de Puerto Rico.

11. En o para el mes de noviembre del 2022, la señora Caraballo le informó al Sr. Hernández su intención de trasladarse junto a sus hijos al Estado de Texas, esto con el propósito de mejorarle el estilo de vida de los menores y de que dicho traslado operaría en el mejor interés de esto[s].

12. Del testimonio de la señora Caraballo Vargas también surgió que el señor Martínez retuvo a los menores desde el mes de enero de 2023, limitando el acceso absoluto de éstos a su abuelo y tía maternos quienes siempre han sido una fuente de apoyo familiar para los menores.

13. También indicó que el señor Martínez había incumplido con llevar a los menores a sus terapias y que por ello existía la posibilidad de que estos servicios fuesen suspendidos.

14. A partir de enero, la supervisión escolar ha recaído exclusivamente en el demandante, quien ha demostrado ejercer una pobre supervisión sobre las tareas escolares.

15. La señora Caraballo manifestó que advino en conocimiento de ello cuando se personó a la escuela Antilles y le indicaron la infinidad de trabajos, documentos, tareas en blanco y exámenes sin completar de ambos menores. Debemos recalcar que la responsabilidad y supervisión de dichas tareas recayó exclusivamente en el señor Hernández desde el mes de enero del 2023.

16. Surge de los documentos admitidos en evidencia que la merma en las notas de ambos menores es significativa una vez fueron matriculados en Antilles Middle School.

17. Asimismo, cuando mamá revisó las libretas de los menores notó una desorganización tremenda, adjudicada a una pobre supervisión de las tareas escolares.

18. Del testimonio de la señora Caraballo surgió que el señor Martínez matriculó a los menores en Antilles sin la autorización de ésta, y que además, no proveyó la información de contacto de mamá, limitando así todo acceso de información a ésta.

19. Del testimonio de la señora Caraballo también surgió que ésta encontró una foto pornográfica en el celular del menor Israel, cosa que lo atribuye a la poca o ninguna supervisión de parte del señor Martínez con los asuntos de sus hijos.

20. El señor Martínez indicó que no leyó ni evaluó nada de lo propuesto por mamá en su petición y solicitud de traslado, y que su renuencia a que sus hijos se trasladaran al Estado de Texas junto a mamá se fundamentó en que éste le había radicado en el pasado una orden de protección al amparo de la Ley 54; en una alegada agresión a su persona y a su vez, en que las partes no tienen comunicación alguna si no es a través de mensajes de texto.

21. Declaró el padre, además, que se oponía al traslado de los menores porque "yo soy el papá de los menores".

22. Asimismo, de la prueba presentada y creída, el señor Martínez declaró que no evaluó el plan de relaciones filiales propuesto por Caraballo, ni tampoco hizo investigación alguna sobre los recursos médicos ni escolares propuestos por esta.

23. A pesar de no haber hecho investigación alguna ni evaluar seriamente lo propuesto por la promovente, la señora Caraballo, éste adujo que a su mejor entender los menores estarían mejor en Puerto Rico. Manifestó que no le interesaba tener conversaciones con la señora Caraballo respecto a su propuesta de traslado.

24. El señor Martínez no produjo ni una sola prueba para demostrar que el traslado será adverso al mejor interés de sus hijos.

25. De la prueba escuchada, éste indicó que se oponía al traslado porque en el año 2014 la señora Caraballo le había negado por tres meses la[s] visitas con sus hijos; asimismo, que en una ocasión la señora Caraballo solicitó una orden de protección al amparo de la Ley 54, así como que mantenía un patrón de "ocultarle" información médica de sus hijos.

26. El demandante no produjo evidencia alguna más allá de estas alegaciones en respuesta a por qué el traslado no operaría en el mejor bienestar de sus hijos, ni tampoco produjo evidencia alguna sobre las condiciones y/o estilo de vida de los menores en Puerto Rico ni de su disponibilidad.

27. En diciembre del 2022, sin la autorización expresa de la señora Caraballo, el señor Martínez matriculó unilateralmente a los menores en Antilles Military School. Previo a este cambio, los menores estudiaban en Victory Academy. Según surge de los reportes de notas de esta última institución, sus calificaciones eran excelentes.

28. Surge del testimonio del señor Martínez que hace escasamente dos meses fue que se enteró de quiénes son los médicos que atienden a los menores y adujo que dicho desconocimiento se debía a que mamá escogió los mismos unilateralmente.

29. Del testimonio y del expediente judicial surge que la señora Caraballo siempre ha tenido la custodia de sus dos hijos menores de edad.

30. Asimismo, manifestó y confirmó que el señor Martínez, por razón de su trabajo, no siempre está en Puerto Rico, delegando el cuido directo de sus dos hijos menores de edad en los abuelos paternos.

31. La señora Caraballo también indicó que una vez recibió la oferta de trabajo como Mental Health Clinician en Vighter, San Antonio Texas, alquiló un apartamento en Azul Apartment Homes en 6674 Prue Rd #8201, San Antonio TX, lugar propuesto para el traslado de los menores. Dicho apartamento consta de tres cuartos, dos baños, área de balcón, un espacio individual para los menores y un cuanto para ésta y su actual esposo Javier E. Dávila Rosa. Cada menor tendría su propio cuarto. Asimismo, dicho complejo de apartamentos se encuentra muy cercano al medical center, lugar donde los menores recibirían sus servicios. El apartamento

tendría un canon de arrendamiento de $1,600.00 mensuales.

32. Dicha ubicación cuenta con facilidades médicas cercanas en atención a las necesidades médicas de los menores, tales como psiquiatras, psicólogos, oftalmólogos, neurólogos y neumólogos pediátricos.

33. El lugar propuesto por Caraballo para que sus hijos cursen estudios escolares [es] Harmony Science Academy, lugar cercano a la residencia de ésta.

34. Caraballo le aseguró a este Tribunal que dicha escuela cuenta con un programa de ESL, tomando en consideración el nivel de ajuste y progreso de los menores específicamente en el fortalecimiento de sus destrezas en el idioma inglés para que éstos puedan tener un mejor ajuste de aprobarse el traslado.

35. La señora Caraballo también indicó que, en su petición de traslado, en adición a lo ya indicado, le proveyó al señor Martínez los planos del apartamento, la ubicación de este, la cercanía con las áreas recreativas, de disfrute familiar, centros comerciales, especialistas médicos y las escuelas propuestas. Manifestó que todos los especialistas propuestos aceptan el plan médico patronal al que tiene derecho.

36. La señora Caraballo también indicó que su padre estaría trasladándose junto a esta al Estado de Texas para fungir como una fuente de apoyo familiar para ésta y sus hijos menores de edad.

En su sentencia, el TPI evaluó la solicitud de traslado conforme los criterios de la Ley Núm. 102-2018. De tal forma, el foro primario consideró: (1) si la relocalización es para impedir las relaciones paternofiliales, (2) si existe una relación válida y determinante para relocalizarse, y (3) si la relocalización ofrecerá una mejor oportunidad de vida para la madre custodia y los menores. A tales efectos, el foro primario destacó que la Sra. Caraballo ha sido la cuidadora principal de los menores en todos los aspectos emocionales, afectivos, educativos y de salud. En cambio, en cuanto al Sr. Martínez, indicó que, durante el tiempo que retuvo a los menores bajo su custodia, éste había desplegado una pobre supervisión. También señaló que el Sr. Martínez no obró con la diligencia de un buen padre de familia al negarse infundadamente a evaluar la propuesta de relocalización de la Sra. Caraballo.

Por otro lado, el TPI manifestó su aprobación al lugar de vivienda e instituciones escolares y médicas propuestas, y concluyó que éstas brindarán una estabilidad emocional, física y educativa superior a la que los menores reciben en Puerto Rico. También expuso estar convencido de que la oferta de trabajo de la madre custodio, sumado al ingreso de su actual esposo, redundará en una mejor posición social y económica para la familia. Puntualizó que dejar a los menores en Puerto Rico no responde a sus mejores intereses, sino que, por el contrario, podría repercutir en una desestabilización emocional, afectiva, escolar y opuesta a su mejor bienestar.

En fin, el TPI concluyó que la solicitud de relocalización de los menores al Estado de Texas no se efectuó con el propósito de impedir la relación paternofilial, que existe una razón válida para tal relocalización y que ésta ofrecerá una mejor oportunidad de vida a los menores y la madre custodia. En fin, a la luz de los criterios esbozados y en atención al mejor bienestar de los menores, el TPI declaró con lugar la solicitud de relocalización y autorizó el traslado permanente de los menores junto a su madre al Estado de Texas, efectivo a mayo de 2023, una vez los menores culminaran su semestre escolar.

En desacuerdo con el dictamen, el Sr. Martínez presentó una moción de reconsideración el 23 de mayo de 2023. Adujo que la relocalización permanente al Estado de Texas no obraba en el mejor bienestar de los menores y solicitó la intervención de la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal para la investigación e informe correspondiente. El TPI denegó la solicitud de reconsideración mediante orden notificada el 2 de junio de 2023.

Inconforme, el 5 de julio de 2023, el Sr. Martínez instó el presente recurso y apuntó los siguientes señalamientos de error:

Primer señalamiento
El Tribunal de Primera Instancia incurrió en error de derecho o craso abuso de discreción al autorizar la relocalización de los menores en inobservancia de las disposiciones de la Ley Núm. 102-2018 y la doctrina reiterada en *Jusino González v. Norat Santiago,* 2023 TSPR 47.

Segundo señalamiento
El Tribunal de Primera Instancia incurrió en error de derecho o craso abuso de discreción al ignorar las tres súplicas del padre no custodio para que la solicitud de relocalización y su oposición fuesen referidas a la Unidad Social de Relaciones de Familia y Asuntos de Menores para investigación, informe y recomendaciones, con la correspondiente actualización del Informe Social de 2016.

Tercer señalamiento
El Tribunal de Primera Instancia incurrió en error de derecho o craso abuso de discreción al no ejercer su poder de *parens patriae* conforme a la Ley Núm. 102-2018 y autorizar la relocalización de los menores sin considerar los factores estatutarios para determinar y salvaguardar el mejor bienestar de los menores.

En síntesis, adujo que el foro primario incidió al adjudicar la solicitud de relocalización fundamentado en la prueba presentada por las partes durante la vista, sin haber referido el asunto a la Unidad Social de Relaciones de Familia y, por tanto, sin que el tribunal tuviera ante si todos los elementos necesarios para llegar a una determinación de traslado que salvaguardara los mejores intereses y bienestar de los menores. Asegura que *Jusino González* estableció la norma de que toda solicitud de relocalización de menores requiere la investigación e informe correspondiente de la Unidad Social.

Luego, mediante *Moción en cumplimiento de orden sometiendo transcripciones* de 21 de noviembre de 2023, el Sr. Martínez presentó la transcripción de la prueba oral de las vistas llevadas a cabo ante el foro primario. Con la anuencia de la Sra. Caraballo[24], aprobamos la transcripción de la prueba oral según presentada.

---

[24] Conforme surge de la *Moción en solicitud de orden y término final para contestar* presentada por ésta el 1 de noviembre de 2023.

El 7 de diciembre de 2023, la Sra. Caraballo presentó su alegato en oposición. En éste, adujo que el dictamen emitido por el TPI está sustentado en la prueba que tuvo ante su consideración, y que el hecho de que el tribunal no hubiera ordenado la realización de un informe social en forma alguna implicaba que dicho foro careciera de los elementos necesarios para llegar a una determinación de relocalización que atendiera los mejores intereses y bienestar de los menores.

**II.**

**A.**

En nuestro ordenamiento, es norma conocida que los tribunales apelativos no intervendrán con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad, o que incurrió en error manifiesto.[25] Ello pues, porque los jueces de primera instancia son quienes están en mejor posición de aquilatar la prueba y adjudicar credibilidad, que incluye, entre otros factores, ver el comportamiento de los testigos mientras ofrecen su testimonio.[26] Sólo se podrá intervenir con sus determinaciones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba.[27]

No obstante, a pesar de esta norma de deferencia judicial, el Tribunal Supremo ha indicado que cuando las determinaciones de hecho del foro primario estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición

---

[25] *Ortiz Ortiz v. Medtronics,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Gómez Márquez v. El Oriental,* 203 DPR 783, 793 (2020).

[26] *Ortiz Ortiz v. Medtronics,* supra, págs. 778-779; *Gómez Márquez v. El Oriental,* supra, pág. 792; *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013).

[27] *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011).

que el foro revisado. Por consiguiente, el tribunal apelativo tendrá la facultad de adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta.[28]

**B.**

La patria potestad se define como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación.[29]

La custodia es un componente de la patria potestad porque impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía.[30] Es decir, la custodia es la tenencia o control físico que tiene un progenitor sobre los hijos.[31]

Al adjudicar la custodia de un menor, los tribunales están llamados a utilizar como criterio rector el bienestar y los mejores intereses de éste.[32] De ahí que la decisión de un tribunal en torno a la custodia de un menor debe tomarse luego de realizar un análisis objetivo sereno y cuidadoso de todas las circunstancias presentes en el caso ante sí, teniendo como único y principal objetivo el bienestar de los menores.[33]

Específicamente en los casos de relocalización de un menor, el tribunal debe evaluar la petición de conformidad con los requisitos establecidos en la *Guía Uniforme para Casos de Relocalización del Padre Custodio*, Ley Núm. 102-2018.[34] La Exposición de Motivos de esta ley dispone que su propósito es salvaguardar el principio rector de asegurar el mejor bienestar del menor. La legislación reconoce, además, que un padre puede querer relocalizarse para buscar un

---

[28] *Íd.*, pág. 777.
[29] Artículo 589 del Código Civil (32 LPRA sec. 7241).
[30] *Jusino González v. Norat Santiago*, 211 DPR 855, 863 (2023).
[31] *Íd.*
[32] *Íd.*, pág. 864.
[33] *Íd.*
[34] 32 LPRA sec. 3371 *et seq.*

nuevo comienzo basado en nuevas oportunidades de trabajo, mejor calidad de vida o simplemente buscar un cambio en la misma. Puntualiza que, independientemente de las razones justificadas que pueda tener ese padre custodio, la intervención del Tribunal se hace necesaria en muchas ocasiones para reconocerle al padre no custodio su derecho a relacionarse con su hijo.

En ese contexto, el inciso (a) del Artículo 6 de la Ley 102-2018[35], establece que se permitirá la relocalización de un menor si se prueba que:

(1) No es para impedir la relación del padre no custodio o persona interesada con el menor;

(2) Existe una razón válida y determinante para relocalizarse; y

(3) Ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor como para el menor.

Por su parte, el inciso (b) del mismo artículo desglosa los factores adicionales que el tribunal deberá analizar para autorizar la relocalización y determinar si la relocalización opera en el mejor bienestar del menor. Estos factores son:

(1) Preferencia del menor en aquellos casos donde tenga derecho a ser oído;

(2) Relación del menor con el padre no custodio;

(3) Relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita;

(4) Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella;

(5) Oportunidades de desarrollo, tanto emocional, como físico y educacional;

(6) Impacto que tendrá el traslado en su desarrollo;

(7) Disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique;

(8) Potencial de cambio en la vida del padre custodio o tutor y del menor;

---

[35] 32 LPRA sec. 3376.

(9). Posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor;

(10) Grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor;

(11) El tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada;

(12) Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director;

(13) En caso de que el menor no tenga edad suficiente para asistir a la escuela, nombre del cuido e información completa en el que estará el menor o en caso de que sea una persona particular información completa de la misma;

(14) Lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono;

(15) Información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso;

(16). Información del casero en los casos donde la residencia sea alquilada;

(17) Certificación de empleo o estudios;

(18) Se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor;

(19) El seguro médico que tendrá el menor; y

(20) Cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes.

Así pues, es importante que el tribunal a cargo de una solicitud de traslado de un menor cuente con los elementos necesarios para llegar a una determinación que salvaguarde el mejor interés y bienestar de éste.[36] Los mejores intereses del menor van atados a sus necesidades físicas, morales y espirituales.[37] De esta forma, la determinación de custodia constituye un ejercicio

---

[36] *Jusino González v. Norat Santiago,* supra, pág. 868.
[37] *Rivera v. Morales,* 167 DPR 280, 293 (2006), citando a *Nudelman v. Ferrer Bolívar,* 107 DPR 495, 511 (1978).

discrecional ponderado que siempre debe redundar en el mejor bienestar del menor.[38]

Así pues, conforme a las prerrogativas que derivan del poder de *parens patriae* del Estado, un tribunal tiene la potestad de ordenar las investigaciones de índole social que entienda pertinentes.[39] A esos efectos, la Unidad Social de Relaciones de Familia y Asuntos de Menores tiene como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración.[40]

Por último, precisa señalar que las determinaciones de custodia no constituyen propiamente cosa juzgada, debido a que están sujetas a revisión judicial de ocurrir un cambio en las circunstancias, siempre que se considere el mejor interés y bienestar del menor. Esto es, pueden surgir hechos y circunstancias posteriores al dictamen que requieran que se modifique.[41]

Dentro de las normas jurídicas enunciadas, procedemos a resolver el asunto ante nuestra consideración.

**III.**

Por estar relacionados, discutiremos en conjunto los señalamientos de error. En síntesis, en dichos errores el Sr. Martínez Hernández adujo que el foro primario incidió al adjudicar la solicitud de relocalización solamente a base de la prueba presentada por las partes durante la vista, sin haber referido el asunto a la Unidad Social de Relaciones de Familia y, a su juicio, sin que el tribunal tuviera ante sí todos los elementos necesarios para llegar a una determinación de traslado que salvaguardara los mejores intereses y bienestar de los menores. El Sr. Martínez

---

[38] *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 652 (2016).
[39] *Íd.*
[40] *Íd.*
[41] *Jusino González v. Norat Santiago,* supra, pág. 866.

Hernández asegura que, según el caso de *Jusino González,* supra, toda solicitud de relocalización de menores requiere la investigación e informe correspondiente de la Unidad Social. Veamos.

La prueba demostró que la Sra. Caraballo Vargas es quien ostenta la custodia física y legal de los menores, y que se encuentra casada con el señor Javier Enrique Dávila Rosa, con quien procreó otra menor. Del testimonio de la Sra. Caraballo Vargas surge que su esposo es una figura de apoyo para los menores.

También surge que la Sra. Caraballo Vargas le informó al Sr. Hernández que recibió una oferta de empleo y que su intención era trasladarse junto a sus hijos al Estado de Texas. Esto con el propósito de mejorar el estilo de vida de los menores. De igual forma, le notificó el lugar designado para vivienda, con el plano de descripción del predio, le indicó la escuela en la que matricularía a los menores, incluyendo el programa disponible para desarrollar las destrezas del idioma inglés, los lugares aledaños para recreación, hospitales y consultorios para cubrir sus necesidades médicas. También indicó que el abuelo materno de los menores se trasladaría con ellos a Texas para fungir como fuente de apoyo familiar.

De otro lado, ambas partes coincidieron en que el Sr. Martínez Hernández, por razón de su trabajo, no siempre está en Puerto Rico, delegando el cuido directo de sus dos hijos menores de edad en los abuelos paternos. También, que éste retuvo a los menores desde enero de 2023, cambiándolos unilateralmente de escuela, ejerciendo una pobre supervisión sobre las tareas escolares e incumpliendo con su obligación de llevarlos a sus terapias.

En lo referente a la solicitud de traslado, también quedó demostrado a través del propio testimonio del Sr. Martínez Hernández que éste no leyó ni evaluó nada de lo propuesto por la Sra. Caraballo Vargas. También declaró que se opone a que sus hijos se trasladen al Estado de Texas por motivo de un pasado incidente

de agresión ocurrido entre las partes y a su vez, en la pobre comunicación existente entre éste y la madre custodia. De igual forma, expresó que no evaluó el plan de relaciones filiales propuesto, ni investigó los recursos médicos y escolares sugeridos. A pesar de ello, aseguró que, a su juicio, los menores estarían mejor en Puerto Rico. Ello, sin presentar prueba relativa al estilo de vida que llevan los menores en Puerto Rico o prueba que demostrara que el traslado propuesto no opera a favor del bienestar de los menores.

Al evaluar dicha prueba a la luz de los criterios establecidos en la ley Núm. 102-2018, coincidimos con el TPI en que la Sra. Caraballo Vargas no solicitó la relocalización con el fin de impedir la relación de los menores con el Sr. Martínez Hernández. Esto pues, porque de su propio testimonio surge que ésta sugirió un plan de relaciones paternofiliales, derecho que el TPI garantizó al Sr. Martínez Hernández en la sentencia apelada.

Igualmente, la Sra. Caraballo Vargas presentó una razón válida y determinante para la relocalización. A tales efectos, expresó y sustentó con documentos que tiene una oferta de trabajo competitiva en Texas. La Ley Núm. 102-2018 reconoce el derecho de un progenitor a querer relocalizarse para buscar un nuevo comienzo basado en nuevas oportunidades de trabajo, mejor calidad de vida o simplemente buscar un cambio de vida, independientemente de cuáles sean las razones para ello.

Así también, la Sra. Caballero Vargas evidenció que la relocalización ofrecerá una mejor oportunidad de vida para ella y los menores. Así, comprobó que alquiló un apartamento junto a su esposo, que dicho lugar de vivienda está aledaño a la escuela y lugares de interés recreativo y para asegurar la continuidad de los servicios médicos de los menores. Incluso, el abuelo materno, quien es parte del grupo de apoyo de los menores en Puerto Rico, se muda con ellos para Texas. Es decir, la Sra. Caraballo Vargas demostró el

cumplimiento con los criterios para que el tribunal autorice la solicitud de relocalización.

Conforme a la norma jurídica esbozada, el tribunal, en su poder de *parens patriae*, tiene la potestad de ordenar las investigaciones de índole social que entienda pertinentes para adjudicar asuntos relativos a la custodia de un menor. En ese contexto, la Unidad Social de Relaciones de Familia y Asuntos de Menores tiene como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración.

Ahora bien, el informe del trabajador social es necesario en aquellos casos en que haya que determinar la validez de las alegaciones de que el traslado no opera en el mejor interés de los menores. En el caso ante nuestra consideración, a pesar de que el Sr. Martínez Hernández alegó que la relocalización no redundaría en beneficio de los mejores intereses de éstos, no presentó prueba alguna que sustentara su oposición al traslado que avalara la necesidad y conveniencia de un estudio social.

En *Jusino González* el Tribunal Supremo expresó la importancia de que el tribunal a cargo de una solicitud de traslado cuente con los elementos necesarios para llegar a una determinación para salvaguardar el mejor interés y bienestar del menor. En *Jusino González* la madre del menor presentó una solicitud de relocalización existiendo un decreto de custodia compartida. Al solicitarse el traslado, el menor tenía dos años. La parte allí peticionaria presentó el informe interagencial, pero el trabajador social rindió un informe social sin recomendaciones. En el interín, y luego de varios trámites procesales, que incluyeron la paralización del asunto del traslado hasta tanto se adjudicara una orden de protección al amparo de la Ley Núm. 246-2011, el menor alcanzó la edad de seis años. Debido al tiempo transcurrido, el foro

de primera instancia ordenó que se actualizara el aspecto de la vivienda del informe interagencial. No obstante, ante la oposición fundamentada del padre del menor, el TPI revirtió su determinación que permitía la actualización del informe interagencial. Presentado el recurso de *certiorari* ante el Tribunal de Apelaciones, dicho foro se abstuvo de intervenir en el caso. Más adelante, el Tribunal Supremo revocó al foro primario y concluyó que la actualización del informe interagencial era necesario para la adjudicación del caso en sus méritos, puesto que las realidades y necesidades del menor habían cambiado. Entendió que, en esas circunstancias, el tribunal sentenciador no contaba con la información completa para hacer una determinación de relocalización que precisamente conlleva que se adjudique la custodia exclusiva del menor a uno de los progenitores.

A diferencia del caso de *Jusino González,* en el caso de autos la Sra. Caraballo Vargas tiene la custodia monoparental de los menores. Además, el Sr. Martínez Hernández no presentó una oposición fundamentada a la solicitud de relocalización. Más aún, la solicitud de relocalización presentada por la Sra. Caraballo Vargas atendió todos los elementos a ser examinados por un tribunal en estos casos y, a su vez, estuvo sustentada con prueba acreditativa de lo propuesto para sus hijos. Ante este cuadro fáctico, el foro primario estimó, dentro de su sana discreción, que no era necesario el informe social. El TPI tiene a su haber, dentro de su sana discreción, y conforme con los criterios establecidos en la Ley Núm. 102-2018, el manejo de los métodos para dilucidar una solicitud de relocalización, según determine como adecuado y pertinente. Del examen del recurso nada sugiere que, en el ejercicio de sus facultades, el foro apelado, hubiere incurrido en error o en abuso de la discreción que le asiste, de forma tal que se haga meritorio eludir

la norma de deferencia hacia la apreciación de prueba de los tribunales de primera instancia.

El Sr. Martínez Hernández no controvirtió la apreciación de la prueba y adjudicación de credibilidad del tribunal apelado. Tampoco pudo demostrar que el foro primario se equivocó en la aplicación del derecho. En ausencia de una demostración clara de que el foro de primera instancia erró en su apreciación de la prueba o que actuó con perjuicio o parcialidad o cometió un error de derecho, estamos obligados a honrar la norma de la deferencia hacia las determinaciones del TPI.

## IV.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Grana Martínez concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones