Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **BRANDON LOUIS BELTRAN RODRIGUEZ**<br><br>Peticionario<br><br>v.<br><br>**DINALYS JOAN GONZALEZ VELEZ**<br><br>Recurrida | KLCE202400598 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil núm.: HU2021RF00509 (Salón 303)<br><br>Sobre: CUSTODIA – MONOPARENTAL O COMPARTIDA Y OTROS |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de agosto de 2024.

Comparece ante nos, Brandon Beltrán Rodríguez, en adelante, Beltrán Rodríguez, solicitando que revoquemos una *"Orden"* del Tribunal de Primera Instancia, Sala de Humacao, en adelante, TPI-Humacao, notificada el 29 de abril de 2024. En la misma, el Foro Recurrido no dio su autorización para que se hicieran evaluaciones o entrevistas adicionales al pleito de custodia de epígrafe.

Por los fundamentos que a continuación esbozaremos, *denegamos* expedir el auto de certiorari.

**I.**

Producto de una relación entre Beltrán Rodríguez y Dinalys González Vélez, en adelante, González Vélez o recurrida, nacieron los menores ABG y RBG en los años 2019 y 2020, respectivamente.[1] Sin embargo, el 20 de septiembre de 2021, Beltrán Rodríguez

---

[1] Apéndice del recurso, pág. 1.

presentó una *"Demanda"* de Custodia ante el TPI-Humacao.[2] En la misma, alegó que abandonó la residencia en donde convivía con la recurrida, debido a que sufría violencia doméstica en la relación, y por la negligencia de González Vélez con ABG y RBG.[3]

Por otro lado, el 21 de septiembre de 2021 – un día después de presentada la *"Demanda"* precitada – el Tribunal de Primera Instancia de Humacao, Sala Municipal, concedió una Orden de Protección, a favor de ABG y RBG, representados por su padre, aquí recurrente, en contra de González Vélez.[4] Según la orden mencionada, el recurrente alegó que las condiciones de salud e higiénicas en las que la recurrida mantenía a los hijos de ambos, le afectó los genitales a ABG y RBG.[5] Por estas alegaciones, las relaciones maternofiliales entre la recurrida y los menores fueron suspendidas, se le concedió la custodia provisional a Beltrán González y se ordenó al Departamento de la Familia a investigar.[6]

Así las cosas, el 15 de octubre de 2021, las partes llegaron a un acuerdo provisional para compartirse la custodia de los menores.[7] Luego, el 27 de octubre de 2021, González Vélez presentó su *"Contestación a la Demanda & Reconvención"*.[8] En su reconvención, alegó que ella era el sostén económico del hogar que compartió con los menores y el recurrente, y que este último no aportaba asistencia monetaria, de cuido, alimentos, citas médicas, etc.[9] Por ello, solicitó al Foro Primario la custodia legal de ABG y RBG, por entender que esto se alinea a los mejores intereses de bienestar y cuidado de los menores.[10] Por su parte, Beltrán González

---

[2] Apéndice del recurso, pág. 1.
[3] *Id.*
[4] *Id.* pág. 4.
[5] *Id.*
[6] *Id.*
[7] *Id.* pág. 16.
[8] *Id.* pág. 11.
[9] *Id.* pág. 17.
[10] *Id.* pág. 20.

contestó a la reconvención de la recurrida el 14 de noviembre de 2021.[11]

Posteriormente, el 7 de enero de 2022, Beltrán González solicita nuevamente una Orden de Protección a favor de ABG y RBG, la cual fue concedida, por una alegada agresión de la recurrida hacia uno de estos.[12] Por estos hechos, el 10 de enero de 2022, el recurrente volvió a solicitarle al TPI-Humacao la suspensión de las relaciones maternofiliales de González Vélez con los menores.[13] Ese mismo día, la Trabajadora Social, Sra. Vicky Peguero Pimentel, de la Unidad Social de Familia y de Menores, sometió al Foro Recurrido una *"Moción de Informe Social"*.[14] En el precitado informe, se recomendó la custodia compartida de los menores.

Sin embargo, a causa de la nueva orden de protección, el 1 de febrero de 2022, el TPI-Humacao, ordenó a la Unidad Social de Familia y de Menores a actualizar el informe rendido.[15] Además, dispuso que una vez cumplido esto último, las partes deberían informar si impugnarían el informe, y los peritos que para ello utilizarían.

Finalmente, el 22 de febrero de 2022, con relación a la segunda orden de protección solicitada y luego de una vista en su fondo, el TPI-Humacao expidió la misma por un periodo de cuatro (4) meses.[16] Aun así, en la misma dispuso de relaciones filiales con la recurrida, de manera provisional.[17]

Previo al vencimiento de la precitada orden, el 24 de marzo de 2022, Beltrán Rodríguez presentó otra moción al Foro Recurrido, solicitando que se suspendieran las relaciones filiales provisionales

---

[11] Apéndice del recurso, pág. 21.
[12] *Id.* pág. 30.
[13] *Id.* pág. 27.
[14] *Id.* pág. 35.
[15] *Id.* pág. 57.
[16] *Id.* pág. 63.
[17] *Id.*

establecidas, por alegado maltrato físico.[18] El 21 de julio de 2023, mediante moción, el recurrente volvió a solicitarle al TPI-Humacao la suspensión de las relaciones maternofiliales.[19] Ese mismo día, el Foro Primario, mediante *"Orden"*, concedió a la recurrida hasta el 31 de julio de 2023 para presentar su posición con relación a la solicitud de Beltrán Rodríguez.[20] También, ordenó al Departamento de la Familia a informar sus hallazgos y su plan de acción, si alguno. Suspendió, además, las relaciones maternofiliales. Finalmente, refirió esta situación a la Unidad Social de Familia y de Menores nuevamente, y le concedió hasta el 2 de agosto de 2023 para informar sus hallazgos y recomendaciones.

El 7 de agosto de 2023, el TPI-Humacao ordenó un plan para que los menores se relacionaran con la recurrida, en el mismo tribunal.[21] Para ello, ordenó que se coordinaran las visitas con la trabajadora social de la Unidad Social de Familia y de Menores. Más adelante, el 21 de septiembre de 2023, la Trabajadora Social de la unidad en cuestión, Peguero Pimentel, radicó una *"Moción Informativa"* respecto al caso de epígrafe, en la que instruyó al TPI-Humacao sobre sus esfuerzos investigativos al respecto.[22] Mediante *"Orden"* del 22 de septiembre de 2023, el Foro Recurrido le concedió a la referida Trabajadora Social hasta el 13 de octubre de 2023 para presentar su informe final.[23] Además, ordenó al Departamento de la Familia a presentar su informe, con relación a los referidos en el caso, dentro de cinco (5) días. El 4 de octubre de 2023, el Departamento de la Familia cumplió con la orden del tribunal, sometiendo su *"Informe Social Confidencial"*.[24]

---

[18] Apéndice del recurso, pág. 65.
[19] *Id.* pág. 67.
[20] *Id.* pág. 73.
[21] *Id.* pág. 74.
[22] *Id.* pág. 75.
[23] *Id.* pág. 77.
[24] *Id.* pág. 78.

Los hallazgos del escrito informan que los menores han sido víctimas de maltrato y "alienación parental por parte de la abuela paterna".[25] Además, indicó que los referidos en contra de la recurrida no se fundamentan.[26] A base de estas conclusiones, la Trabajadora Social del tribunal, Peguero Pimentel, solicitó al Foro Primario, mediante *"Moción Informativa"* del 13 de octubre de 2023, que los menores ABG y RBG fueran puestos al cuidado y bajo la custodia de González Vélez, su madre, y se suspendan las relaciones paternofiliales.[27] También solicitó se le concediera hasta el 26 de octubre de 2023, para presentar su informe social. El TPI-Humacao, mediante *"Orden"* del 16 de octubre de 2023, concedió las solicitudes previamente mencionadas.[28]

El 16 de noviembre de 2023 el Foro Primario celebró una vista en la que se fijaron relaciones paternofiliales provisionales, entre otras cosas.[29] Además, se le concedió hasta el 30 de enero de 2024 a la Unidad de Trabajo Social para presentar su informe final.

El Informe Social Forense que fue finalmente sometido a la consideración del TPI-Humacao, recomendó que se otorgue la custodia de ABG y RBG a la recurrida, y aconsejó un plan de relaciones paternofiliales.[30] El recurrente, mediante moción del 13 de marzo de 2024, indicó que interesaba impugnar los hallazgos.[31] Además, mediante *"Moción Urgente en Cumplimiento de Orden"* del 25 de marzo de 2024, Beltrán Rodríguez indicó que había contratado los servicios de una perito para presentar el informe de impugnación.[32] Añadió que estaba en el proceso de contratar a un experto en enajenación parental.

---

[25] Apéndice del recurso, pág. 83.
[26] *Id.*
[27] *Id.* pág. 86.
[28] *Id.* pág. 87.
[29] *Id.* pág. 92.
[30] *Id.* pág. 146.
[31] *Id.* pág. 148.
[32] *Id.* pág. 149.

El 8 de mayo de 2024, el recurrente solicitó permiso al Foro Recurrido para que los peritos realizaran entrevistas.[33] Sin embargo, el TPI-Humacao ordenó a Beltrán Rodríguez a contratar a uno de los peritos informados, y denegó la solicitud de realizar entrevistas.[34] Además, le dio hasta el 30 de mayo de 2024 para cumplir con lo señalado. El 16 de mayo de 2024, el recurrente le solicitó al Foro Primario que reconsiderara,[35] a lo que este expresó "No Ha Lugar".[36]

Inconforme, el 29 de mayo de 2024, Beltrán Rodríguez presentó una *"Moción Urgente en Solicitud de Orden Provisional en Auxilio de Jurisdicción bajo la Regla 79 de las del Tribunal de Apelaciones de Puerto Rico"*, junto a un recurso de *"Certiorari"*, ante nos. En su solicitud urgente en auxilio de jurisdicción, el recurrente solicitó que paralizáramos los procedimientos en el Foro Primario, por la cercanía del día 30 de mayo de 2024, la cual fue señalada como fecha límite para informar un solo perito.

Por otro lado, en su escrito de *"Certiorari"*, el recurrente hace el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL AL DENEGAR AUTORIZACIÓN A LA PERITO EN TRABAJO SOCIAL PARA HACER ENTREVISTAS A EL PERSONAL ESCOLAR Y MÉDICO CUANDO SE DEMOSTRÓ LA NECESIDAD PARA ELLO Y NO ES ONEROSO Y DAÑINO PARA LOS MENORES, EN ESPECIAL CUANDO HA HABIDO VERSIONES CONTRADICTORIAS Y LAS TRABAJADORAS SOCIALES HAN EVITADO RECIBIR EVIDENCIA DEL RECURRENTE Y AL HABER APROBADO LA PRESENTACIÓN DE UN ANÁLISIS PERICIAL DE ENAJENACIÓN PARENTAL Y A SU VEZ, NO CONCEDER LA EVALUACIÓN PARA LA PREPARACIÓN DEL MISMO.

Mediante *"Resolución"* del mismo día, este Tribunal declaró "No Ha Lugar" la moción en auxilio de jurisdicción, y ordenó a la

---

[33] Apéndice del recurso, pág. 155.
[34] *Id*. pág. 157.
[35] *Id*. pág. 158.
[36] *Id*. pág. 160.

parte recurrida a presentar su escrito en oposición a la expedición del auto, en o antes del 10 de junio de 2024.

El 31 de mayo de 2024, la recurrida presentó ante esta Curia una *"Solicitud de Desestimación por Falta de Jurisdicción"*. Mediante *"Resolución"* del 4 de junio de 2024, este Tribunal declaró la misma "No Ha Lugar". Luego de una breve prórroga, González Vélez radicó su *"Oposición a Expedición de Certiorari"* el día 20 de junio de 2024.

**II.**

**A. Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, *__en casos de relaciones de familia,__* en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar

la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

(Énfasis nuestro).

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o ***en casos de relaciones de familia*** o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 209; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez,* supra, pág. 848. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B)    Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C)    Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)    Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)    Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729,

745 (1986). Véase, además, *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

### B. Custodia

Los padres ostentan el derecho y la responsabilidad – de rango constitucional – de velar por el cuido, custodia y control de sus hijos. *James Montes v. Montes James,* 2024 TSPR 27, 213 DPR ___ (2024); *Rentas Nieves v. Betancourt Figueroa,* 201 DPR 416, 428 (2018); *Estrella, Monge v. Figueroa Guerra,* 170 DPR 644, 662 (2007); *Rivera v. Morales,* 167 DPR 280, 290 (2006). Como entendido general, el lugar para crecer más idóneo para un niño es en el hogar de sus padres. *Pérez, Ex parte v. Depto. de la Familia,* 147 DPR 556, 563 (1999); *Pueblo en interés de los menores R.P.S., et al.,* 134 DPR 123, 134 (1993).

La custodia es la tenencia o control físico que tiene un progenitor sobre sus hijos. *Jusino González v. Norat Santiago,* 212 DPR 855, 863 (2023). En Puerto Rico, las determinaciones sobre custodia deben guiarse por el bienestar y los mejores intereses del menor. Id.; *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016); *Torres, Ex Parte,* 118 DPR 469, 476 (1987).

Por tal razón, un tribunal que dilucida custodia tiene autoridad para citar a todas aquellas personas que, según su criterio, puedan ayudarle a tomar la mejor decisión, en pos del interés óptimo del menor. *Peña v. Peña,* 164 DPR 949, 959 (2005). También, puede ordenar aquellas investigaciones de índole social o evaluaciones psicológicas o psiquiátricas que estime convenientes. *Jusino Gonzalez v. Norat Santiago,* supra, pág. 865; *Rentas Nieves v. Betancourt Figueroa,* supra, pág. 430; *Muñoz Sánchez v. Báez de Jesús,* supra, pág. 652.

En virtud de lo anterior, la Unidad Social de Relaciones de Familia tiene la responsabilidad de ofrecerle al juzgador

asesoramiento mediante evaluaciones que le permitan, en el ejercicio de sus funciones, tomar decisiones fundadas en los casos a su consideración. Oficina de Administración de los Tribunales, Circular Núm. 6 del 6 de agosto de 2013, pág. 1; *Jusino Gonzalez v. Norat Santiago,* supra, pág. 865; *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652.

Ahora bien, cuando un informe preparado por un especialista ha de utilizarse en la resolución de un caso regulando las relaciones de familia, las partes afectadas, así como sus abogados, tienen derecho a examinarlo. Además, el Foro Sentenciador debe proveer una oportunidad a las partes, con el fin de que puedan impugnarlo. *Rentas Nieves v. Betancourt Figueroa*, supra, págs. 431-432.

**III.**

Beltrán Rodríguez nos solicita que dejemos sin efecto la orden recurrida, para así poder contratar dos peritos – uno para impugnar el informe social y otro para impugnar las alegaciones de enajenación parental. Desea, además, que mediante la revocación solicitada, se le autorice a sus peritos a realizar entrevistas adicionales.

Luego de un examen sosegado del expediente ante nos, y la norma estatutaria y jurisprudencial que regula la custodia y su ventilación judicial, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Foro Primario. Este Tribunal ha evaluado detenidamente el expediente y el tracto procesal del caso de epígrafe, y no encontramos razón en derecho que justifique nuestra intervención.

Luego de apreciar el planteamiento que la parte peticionaria propone ante este Foro, distinguimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al ordenarle al recurrente que contrate a un solo perito para la vista de impugnación señalada. Tampoco hemos hallado abuso o error en la

determinación del Foro Recurrido, en su discreción de no autorizar nuevas entrevistas. Ello, nos hace concluir que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna.

**IV.**

Por los fundamentos antes expuestos, *denegamos el auto solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones