Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JENITZA SANTIAGO TORRES<br><br>Apelada<br><br>v.<br><br>MOISÉS LABRADOR FLORES<br><br>Apelante | KLAN202400709 | Apelación procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Caso núm.: AI2019RF00194 (003)<br><br>Sobre: Divorcio (Ruptura Irreparable) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Sanchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de octubre de 2024.

Un padre de una menor, quien cumplió 6 años de edad hace apenas unos días, impugna la decisión del Tribunal de Primera Instancia ("TPI") de (i) permitir que la niña viaje a Estados Unidos a relacionarse con el padre por un mes (este solicita sea, en vez, por mes y medio), (ii) exigir que el padre pague por el pasaje aéreo de la niña para el referido viaje (el padre solicita que la madre pague la mitad), y (iii) permitir que la niña hable con el padre tres veces en semana por espacio de una hora (este solicita sea, en vez, todos los días). Según se explica a continuación, concluimos que procede la confirmación de lo actuado por el TPI.

I.

La acción de referencia, sobre divorcio, se presentó en noviembre de 2019 por la Sa. Jenitza Santiago Torres (la "Madre")

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre *Normas para la Asignación de Recursos Nuevos previamente Presentados en el Tribunal de Apelaciones*. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores: KLAN202200523, KLCE202201263 y KLCE202300642.

en contra del Sr. Moisés Labrador Flores (el "Padre"); estos habían contraído matrimonio el 18 de agosto de 2017 en Killeen, Texas. Al cabo de varias incidencias procesales, en agosto de 2020, el TPI emitió una *Sentencia* en la que decretó disuelto el vínculo matrimonial.

Durante su matrimonio, las partes procrearon una hija (la "Hija" o la "Menor"), quien nació en Puerto Rico el 8 de octubre de 2018. En la sentencia de divorcio, el TPI determinó que la patria potestad sería compartida y le concedió la custodia a la Madre. Las relaciones paternofiliales serían abiertas. Además, le concedió a la Madre facultades tutelares a favor de la menor para que pueda tomar decisiones en cuanto a vivienda, salud, educación y gestionar un pasaporte, sin que el consentimiento del Padre, debido a que este reside en los Estados Unidos. Añadió que, de antemano, existía una pensión alimentaria, ascendente a $1,174.00, a favor de la Menor, establecida por la Administración para el Sustento de Menores (ASUME).

Así las cosas, el 22 de diciembre de 2020, el Padre instó una *Moción Urgente para que se Establezcan Relaciones Paterno-Filiales Estructuradas y Ante Estancia del Padre en la Isla*. En síntesis, solicitó relacionarse con la Menor de manera estructurada, incluidos varios días de la Menor pernoctar con este, al confrontar lo que catalogó como múltiples limitaciones para relacionarse con su hija cuando visita la Isla.

Por su parte, el 24 de diciembre, la Madre presentó una *Moción en Contestación a Moción Urgente para que se Establezcan Relaciones Paterno-Filiales (sic) Estructuradas y Ante Estancia del Padre en la Isla*. Refirió que no se opone a que el Padre se relacione con la Menor, pero le preocupaba que el Padre supuestamente no guardaba las medidas de distanciamiento social, aconsejables a raíz de la pandemia del COVID-19, durante su estadía en la Isla. Añadió

que, aunque el Padre insistía en hablar con la Menor (quien entonces contaba con apenas dos años de edad), mediante videollamadas telefónicas, por una hora, a menudo se quedaba dormido y le increpaba cuando la Madre decidía terminar la llamada. La Madre propuso que la Hija se relacionara con el Padre durante un horario fijo, de 10:00 am-5:00 pm, durante todos los días que este se encontrara de visita en Puerto Rico. En cuanto a que la Menor pernoctara con el Padre, la Madre sugirió periodos cortos de no más de dos (2) días consecutivos.

El 23 de diciembre, notificada el 29 de diciembre, el TPI dictó una *Orden* en la cual indicó que la Menor podía pernoctar con el Padre todas las veces que fuera posible durante el periodo de vacaciones navideñas. De no ser posible, el Padre y la Menor podían relacionarse diariamente de 10:30 am-5:00 pm. Los días en los que la Menor pernocte con el Padre, la Madre podía llamarla por las mañanas y en las noches. Además, el TPI les concedió a las partes hasta el 8 de enero de 2021, para que presentaran un acuerdo en torno a las relaciones paternofiliales estructuradas, tanto en días regulares como festivos.

El 8 de enero de 2021, la Madre incoó una *Moción en Cumplimiento de Orden.* Informó que las partes acordaron que la Menor pernoctaría con el Padre desde el 29 de diciembre hasta el 31 de diciembre de 2020. No obstante, luego de tener conocimiento de la *Orden* del 29 de diciembre, la Madre alegó que el Padre rehusó a cumplir con su compromiso de entregar a la menor el día 31 de diciembre hasta el siguiente el 1 de enero de 2021, cuando entregó a la Menor aproximadamente a la 1:30 pm. Añadió que se oponía a que la Menor pernoctara en casa del abuelo paterno de la Menor por estar registrado en el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores.

La Madre también detalló que la Menor, en ese entonces de dos (2) años, no contaba con una cama individual para dormir cuando pernoctaba con su Padre, y que dormía con el Padre, su esposa y una hermana. Es decir, que dormía con tres (3) personas adicionales en una cama. Además, la Madre solicitó un estudio social y propuso un esquema de relaciones paternofiliales con el cual el Padre supuestamente no estuvo de acuerdo.

El 9 de enero de 2021, el TPI dictó una *Resolución* en la que dejó sin efecto el plan de relaciones paternofiliales abiertas ante lo que catalogó como la incapacidad de las partes para llegar a los acuerdos necesarios para llevarlas a cabo. Estableció un horario de videollamadas diarias entre 7:00pm-8:00pm, de entre cinco (5) a quince (15) minutos de duración, aunque si la Menor deseaba extenderse por más tiempo, se le permitiría hacerlo. Cuando el Padre se encontrase en Puerto Rico, debía notificarle por escrito a la Madre su viaje con dos semanas de anticipación y dejarle saber los días y horarios en que interesaba compartir con la niña. También debía notificar los lugares, con dirección y teléfono, en donde la Menor estaría pernoctando. Los lugares de recogido y entrega de la Menor serían en el hogar de la abuela materna o el hogar de la Madre. La Menor podía pernoctar con el Padre por un periodo no mayor de cuatro noches consecutivas, siempre y cuando el Padre cumpliera con la notificación escrita con dos semanas de anticipación. Durante dicho periodo, la Madre podría comunicarse con la Menor mediante voz o video entre 7:00 p.m.-8:00 p.m. Si el Padre deseaba que la Menor pernoctara nuevamente, debía dejar transcurrir al menos dos (2) noches de la Menor haber estado con la Madre. El TPI añadió horarios para cuando la Menor no fuera a pernoctar con el Padre y para días festivos. Denegó por el momento la solicitud de referido a la Unidad Social y ordenó a las partes

abstenerse de exponer a la Menor a contagios de enfermedades de fácil transmisión.

Al cabo de varios trámites procesales, el 29 de julio de 2021, el TPI celebró una vista en torno a la ampliación y modificación del plan de relaciones paternofiliales. De acuerdo con una *Minuta* que recoge las incidencias de la vista, quedó pendiente el asunto de los viajes de la Menor a Texas, lugar de residencia del Padre en ese momento. El TPI ordenó a las partes dialogar para que acordaran sobre la edad en que sería viable que la Menor viajase a la residencia del Padre.

El 20 de agosto de 2021, el Padre presentó una *Moción en Cumplimiento de Orden sobre Viajes de la Menor a los Estados Unidos*. Básicamente, se opuso a que el TPI estableciera la edad de cuatro (4) años como el mínimo para autorizar los viajes de la Menor. Además, presentó un esquema de relaciones paternofiliales para los viajes de la Menor. Solicitó que se autorizaran viajes siempre que él tuviese tiempo libre o vacaciones y la Menor no se encontrara en periodo escolar (a partir de kínder), previa notificación a la Madre con dos (2) semanas de anticipación a la fecha programada del viaje. El Padre enviaría a la Madre los pasajes de ida y vuelta. Asimismo, el Padre costearía los pasajes y viajaría a Puerto Rico a buscar a la Menor y de regreso a la Isla.

En respuesta, la Madre instó una *Moción en Contestación a Moción en Cumplimiento de Orden Sobre Viajes de la Menor a los Estados Unidos*. Se opuso al plan propuesto por el Padre para los viajes fuera de Puerto Rico de la Menor.

El TPI ordenó al Padre informar las fechas propuestas para el próximo viaje, para así poder estar en posición de evaluar la solicitud.

Mediante una *Moción en Cumplimiento de Orden* presentada el 23 de octubre de 2021, el Padre reiteró las dificultades para

planificar los viajes, por su carrera militar, pero aclaró que intentaría que los viajes fueran en verano o Navidad por un periodo aproximado de dos semanas. Informó que hizo arreglos para las primeras dos (2) semanas de diciembre.

El 2 de noviembre, el TPI emitió una *Orden* en la que autorizó, **de manera transicional**, viajes fuera de Puerto Rico de la Menor para relacionarse con el Padre a partir del verano de 2022. Se estableció que el Padre debería informar con un mes de antelación las fechas del viaje y la dirección del lugar donde pernoctaría la Menor. Asimismo, durante esas dos semanas, la Madre podría comunicarse con la Menor durante media hora.

Inconforme con el resultado, el Padre solicitó que se le permitiera viajar a la Menor durante las primeras dos (2) semanas de diciembre, para lo cual había hecho arreglos previamente. Por su parte, la Madre se opuso a dicha solicitud por considerar que la Menor únicamente había pernoctado con su Padre por dos noches consecutivas. Además, mostró preocupación de que en un futuro se afectara el periodo lectivo de la Menor debido a que el Padre no pudiese planificar los viajes de la Menor.

Subsiguientemente, el 22 de noviembre, el Padre interpuso una *Réplica* en la que informó que logró hacer arreglos para buscar a la Menor a Puerto Rico el 18 de diciembre, día siguiente al fin de la asistencia al Centro Head Start, y devolverla el 31 de diciembre, con entrega y recogida en el aeropuerto Luis Muñoz Marín.

El 29 de noviembre, el TPI celebró una vista de emergencia, mediante un sistema de videoconferencia. En igual fecha, emitió una *Resolución y Orden* en la cual autorizó el viaje de la Menor con su padre a Texas, desde el 17 de diciembre hasta el 27 de diciembre.

Subsecuentemente, el Padre solicitó la revisión de la pensión alimentaria, y el TPI refirió el asunto a la Examinadora de Pensiones Alimentarias (la "Examinadora"). Luego de varios incidentes

procesales, el 28 de septiembre de 2022, el Padre aceptó capacidad económica.

El 8 de marzo de 2023, el Padre presentó una *Moción Urgente Informativa y en Solicitud de Remedio*. En esencia, sostuvo que era injusto tener que sufragar la totalidad del costo de los pasajes aéreos. Solicitó que se le impusiera a la Madre el pago de los pasajes de avión de regreso de la Menor a Puerto Rico. El 10 de marzo, el TPI emitió una *Resolución* **en la que refirió a la Examinadora el asunto del pago de los pasajes de avión**.

El 23 de enero de 2024, el Padre solicitó la custodia monoparental de la Menor, mediante una *Moción Urgente Sobre Traslado Fuera De La Jurisdicción*. Alegó que la Madre había tenido dos compañeros consensuales, se había mudado en cinco (5) ocasiones en tres municipios distintos y cambiado a la menor de escuela en más de cuatro ocasiones. Añadió que contaba con todas las comodidades necesarias para la Menor en su hogar y que los servicios de salud y seguridad en el lugar donde reside (Louisiana), eran mejores que los de Puerto Rico. Además, sostuvo que su esposa, incapacitada por el ejército de los Estados Unidos, no trabajaba y se dedicaba al cuido de sus otros dos hijos y a los quehaceres del hogar. El 11 de marzo, el Padre reiteró su solicitud de custodia monoparental, mediante una *Moción en Cumplimiento de Orden, para que se Disponga sobre Relaciones Paterno Filiales de Verano y se Atienda Solicitud de Custodia Monoparental*.

El 14 de marzo, la Madre presentó una *Réplica a Moción en Cumplimiento de Orden, para que se Disponga sobre Relaciones Paterno Filiales de Verano y Se Atienda Solicitud de Custodia Monoparental*. En síntesis, se opuso a la solicitud de custodia monoparental y negó las alegaciones en su contra. Insistió en que no se opone a que la Menor se relacione con su Padre, pero indicó que el tiempo solicitado por el Padre en verano le parecía excesivo,

toda vez que la Menor también tiene derecho a disfrutar parte del verano con la Madre y su familia materna.

El 3 de abril, el TPI emitió una *Orden* en la que dispuso que la Menor se relacionaría con su Padre desde finalizado el curso escolar en mayo de 2024 hasta el 30 de junio de 2024.

Luego de varios incidentes procesales, el 23 de mayo, el Padre retiró la admisión de capacidad económica, mediante una *Moción Urgente en Solicitud para que se Dicte Orden y para Retirar Admisión de Capacidad Económica.*

El 24 de mayo, el Padre interpuso una *Moción en Solicitud para que se Dicte Resolución ante Aceptación de Oferta para el Periodo del 11 de Abril de 2022 al 23 de Mayo de 2024.* Alegó que las partes alcanzaron un acuerdo en cuanto a la pensión alimentaria y gastos de la Menor durante el periodo de tiempo antes indicado. El TPI refirió el asunto del acuerdo de la pensión alimentaria de la Menor a la Examinadora.

En igual fecha, el Padre instó una *Moción en Solicitud para que se Dicte Resolución y se Enmienden las Relaciones Paterno Filiales.* En síntesis, sostuvo que deseaba que se establecieran de manera fija las relaciones paternofiliales. Expresó que, si el TPI acogía su plan, desistiría de la solicitud de custodia monoparental debido al alto costo para contratar un perito que realice un estudio interjurisdiccional.

El Padre sugirió un esquema de días feriados alternados entre ambos progenitores. Además, sugirió que, durante el periodo de verano, la Menor pernoctara con el Padre desde el 1 de junio hasta el 15 de julio. Propuso que el costo de los pasajes se dividiera entre ambos progenitores. Propuso videollamadas telefónicas diarias de una hora de duración.

El 14 de junio, la Madre incoó una *Moción en Cumplimiento de Orden en Relación a Moción para que se Dicte Resolución y se*

*Enmienden las Relaciones Paternofiliales.*   Fundamentalmente, se opuso a la solicitud del Padre en cuanto al plan de vacaciones de verano, principalmente por la corta edad de la Menor, cinco (5) años en ese momento, y debido a que la niña nunca había pernoctado más de tres (3) semanas con el Padre.

En cuanto a las llamadas telefónicas o videollamadas, la Madre indicó que el Padre y la Menor no se comunican todos los días, por problemas de conectividad o porque el Padre no puede y no lo notifica antes.  Añadió que a veces tiene compromisos durante el horario de las llamadas y deja a la menor con los abuelos maternos, quienes no son diestros en cuanto a la tecnología de las videollamadas.  La Madre expresó que ha tenido que intervenir ante expresiones del Padre a la Menor para evitar lo que cataloga como daño emocional de la Menor.  Aseveró que el Padre amedrenta y amenaza a la Menor si esta no quiere hablar.  Sugirió un plan de llamadas de tres (3) días por semana y que la duración de estas sea acorde a los deseos de la Menor, toda vez que se le hace difícil mantener una conversación por una (1) hora.

Asimismo, la Madre se opuso a sufragar parte del costo del pasaje de avión de la Menor; señaló que anteriormente el Padre ofreció pagar los pasajes en su totalidad y fue quien eligió vivir fuera de Puerto Rico.

El 26 de junio, el TPI notificó una *Resolución* (el "Dictamen") mediante el cual dispuso que las relaciones paternofiliales, mediante videollamadas o llamadas telefónicas, serían los lunes, jueves y sábados entre 7:00 pm-8:00 pm.  El tiempo de la llamada de una hora sería relativo a los deseos de la Menor, en atención a su corta edad.  En cuanto al periodo de verano, se dispuso que la Menor viajará al lugar de residencia del Padre desde el 1 de junio hasta el 1 de julio de cada año.  Los boletos de avión serán costeados por el Padre.

En desacuerdo, el 29 de julio (primer día laborable luego del 24 de julio), el Padre presentó el recurso de referencia; formula los siguientes señalamientos de error:

Error A
Erró el TPI al limitar sin fundamento las relaciones filiales mediante videollamadas y que habían sido concedidas diariamente desde 2021 tras celebrar una vista evidenciaria a solo tres días por semana porque así lo pidió la Madre en su oposición al plan estructurado de relaciones en [sic] una completa injusticia porque la menor ya está acostumbrada a que su padre la llame y éste tiene el perfecto derecho de llamar a su hija diariamente.

Error B
Erró el TPI al no conceder 45 días al padre para relacionarse con la menor durante el verano aun cuando la madre la tiene consigo todo el año y en un retroceso a las relaciones de verano provisionales concedidas en 2024 que fueron desde la finalización del curso escolar en mayo de 2024 hasta el 30 de junio de 2024.

Error C
Erró el TPI al ordenar al Apelante el pago total de los boletos de avión de la menor para relacionarse con él en los Estados Unidos a pesar de que las partes se casaron y residían como matrimonio en esa jurisdicción por la carrera militar del Apelante y fue la Apelada quien decidió regresar a Puerto Rico tras la separación, adicional a que esta decisión interfiere con el derecho constitucional del padre a relaciones con la menor y su mejor bienestar puesto a que ambos padres vienen llamados a responder por las necesidades y derechos de su hija, siendo una de ellas relacionarse con su padre.

El 18 de agosto, le ordenamos a la Madre presentar su alegato en o antes del 28 de agosto de 2024, de conformidad con lo dispuesto en la Regla 22 de nuestro Reglamento. 4 LPRA Ap. XXII-B, R. 22. El 28 de agosto, la Madre anunció que había prescindido de los servicios de su representación legal y solicitó 30 días adicionales para presentar su alegato. El término solicitado transcurrió sin que la Madre compareciera nuevamente. Resolvemos.

II.

Sabido es que el ejercicio de la custodia sobre los hijos menores de edad, la patria potestad y la toma de decisiones personales en cuestiones de la vida familiar, es un derecho de

raigambre constitucional, que dimana del interés libertario que protege el debido proceso de ley, tanto en la Constitución de Puerto Rico, como en la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Véase, *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). En Puerto Rico, el derecho a las relaciones familiares también se enmarca en el derecho a la intimidad, cuyo ejercicio no depende de legislación que lo habilite, debido a que opera *ex proprio vigore*. *Figueroa Ferrer v. ELA*, 107 DPR 250, 259 y 275 (1978).

Resaltamos que el derecho a mantener relaciones paterno o materno filiales, según sea el caso, es uno apremiante y repercute sobre la política pública a tal punto que los tribunales "pueden regular las relaciones paternofiliales, pero no pueden prohibirlas totalmente, a menos que existan causas muy graves para hacerlo". *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985). Además, son parte integral del desarrollo multidimensional de un menor de edad. Íd. Una vez el tribunal sentenciador otorga la custodia a uno de los progenitores, el progenitor no custodio conserva el derecho de mantener relaciones paterno o materno filiales con el menor. Estas relaciones están revestidas de protección constitucional, al amparo del derecho a la libertad garantizado por la Decimocuarta Enmienda de la Constitución de los Estados Unidos. *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 302 (1985).

Claro está, la norma en cuanto al establecimiento de relaciones filiales tiene preminentemente como norte la protección y el mejor interés del menor. *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418 (1991). Es decir, el derecho a las relaciones familiares no es absoluto, por lo que puede limitarse a fines de propiciar el interés apremiante del Estado de proteger el bienestar de los menores. *Rivera Aponte v. Morales Martínez*, 167 DPR 280, 290 (2006); *Rexach v. Ramírez*, 162 DPR 130, 146 (2004).

Al adjudicar asuntos de esta naturaleza, el tribunal tiene la obligación de sopesar integradamente todos los factores que tenga a su alcance para lograr la solución más justa posible. *Sánchez Cruz v. Torres Figueroa*, 123 DPR a la pág. 431; *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 511 (1978). Dichos factores consisten en: (a) la preferencia del menor, su sexo, edad y salud mental y física; (b) el cariño que pueda brindársele por las partes en controversia; (c) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (d) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (e) la interrelación del menor con las partes, sus hermanos y otros miembros de la familia y; (f) la salud síquica de todas las partes. Raúl Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Vol. I, Programa de Educación Jurídica Continua UIPR, 1997, pág. 724. Lo anterior cobra mayor importancia en aquellos casos en los que los progenitores no se ponen de acuerdo en cómo se reglamentarán las relaciones paternofiliales o cuando estas tienen un efecto adverso a los intereses de los menores. *Sterzinger v. Ramírez*, 116 DPR a la pág. 778.

Finalmente, al dictar la forma en que se reglamentarán los derechos de visita del padre no custodio, el tribunal deberá asegurarse de que este último está capacitado para tener la compañía de su hijo fuera del ámbito del otro progenitor por determinado tiempo, el cual podría ser desde unas horas hasta varios meses. De ordinario, se permitirá el derecho a tener la compañía temporera del menor de la forma más amplia y razonable posible, de acuerdo con las circunstancias y el bienestar del menor. Ello con el propósito de garantizar el derecho fundamental del padre o madre no custodio a la privacidad e intimidad en las relaciones familiares con sus hijos. *Sterzinger v. Ramírez*, 116 DPR a las págs. 778-779.

III.

Luego de un cuidadoso estudio de la totalidad del expediente, concluimos que procede confirmar el Dictamen.

Como cuestión de umbral, resaltamos que el Padre ha estado presente y ha podido relacionarse con la Menor durante toda su vida. La Menor ha viajado y pernoctado con su Padre fuera de Puerto Rico y, según ha crecido la niña, el TPI ha ampliado paulatinamente el tiempo que la Menor permanece con el Padre fuera de Puerto Rico. Asimismo, el Padre ha viajado a Puerto Rico siempre que ha podido y se ha relacionado con la Menor.

En cuanto a la duración del periodo de la Menor fuera de Puerto Rico, es razonable la determinación del TPI. En esta etapa en que la Menor tiene apenas seis años de edad, un mes fuera de Puerto Rico constituye un sustancial período de tiempo que le permite al Padre relacionarse adecuadamente con la Menor. No podemos olvidar que a la Menor también le conviene tener un tiempo de asueto y vacaciones con la Madre y la familia materna. El Padre no ha presentado planteamiento alguno que nos convenza de que los 15 días adicionales que él solicita son necesarios para asegurar el mejor bienestar de la Menor o el adecuado desarrollo de las relaciones entre él y la Hija.

Tampoco el TPI cometió error de derecho, o abusó de su discreción, al determinar que el Padre podría comunicarse tres veces por semana con la Menor. Las razones para limitar las llamadas a tres (3) días a la semana obran en el expediente: problemas de conectividad, la edad de la Menor, la falta de destrezas tecnológicas de los abuelos maternos, la aprehensión de la Madre por expresiones anteriores del Padre a la Menor y el propio trabajo del Padre. Todo ello afecta la duración y frecuencia de las llamadas. El Padre no nos ha convencido de que sea necesario que las llamadas ocurran todos

los días, ni en términos del mejor bienestar de la Menor, ni en términos de la relación entre él y la Hija.

Finalmente, en cuanto al costo de la transportación aérea de la Menor para visitar al Padre en verano, subrayamos que inicialmente el Padre ofreció sufragar la totalidad de los pasajes; de forma similar, inicialmente, aceptó tener capacidad económica para pagar la pensión alimentaria, pero luego retiró dicha capacidad. El asunto de la pensión alimentaria, y de los gastos de la Menor (incluidos los pasajes de avión), está pendiente de adjudicación ante la Examinadora. En esta etapa, no hay base en el récord para intervenir con la discreción del TPI al determinar que, por ahora, el Padre deberá pagar la totalidad de los pasajes de avión de la Hija.

En vista de todo lo anterior, y contrario a lo planteado por el Padre, a este se le ha respetado su derecho a un debido proceso de ley, así como su derecho constitucional a relacionarse con su hija. El Dictamen no contiene error de derecho, o abuso de discreción, alguno que requiera nuestra intervención.

IV.

Por los fundamentos que anteceden, se confirma la *Resolución* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones